STOCKER & SITLER, INC., ET AL., APPELLEES, *v.* METZGER ET AL., APPELLANTS; ET AL., APPELLEES.

(No. 986—Decided August 6, 1969.)

Messrs. *Fitzpatrick & Zimmerman* and *Mr. Donald Zimmerman,* for Stocker & Sitler, Inc., et al.

Messrs. *Patrick, Patrick & Lehigh* and *Mr. Daniel T. Lehigh,* for Walter R. Metzger.

Messrs. *Sani & Barnhouse* and *Mr. James R. Barnhouse,* for sons and daughters of Clarence LeRoy Metzger and the surviving spouse of Clarence L. Metzger.

Messrs. *Smith, Renner, Hanhart & Miller* and *Mr. Dorren Renner,* for William Murphy.

*Mr. Robert A. Mowbray,* for Lonnie and Opal Jones.

*Mr. Clair P. Hoffman,* for Nora Johnson and Edith Kinsey.

RUTHERFORD, J. This appeal is from a declaratory judgment rendered by the Common Pleas Court construing an exception contained in the granting clause of premises conveyed by deed.

On October 30, 1914, by deed recorded in Volume 173, page 489, Tuscarawas County Deed Records, William R. Metzger and Ida C. Metzger conveyed to Richard Montague and Catherine Montague the premises in question, excepting such portion as was reserved by the following portion of the granting clause contained in the same paragraph as the description of the premises granted:

"Excepting there is reserved unto said grantors, all the veins of coal and other substances of value underlying said above conveyed premises, together with all necessary rights of way and privileges of entry thereon to remove same, unto them, their heirs and assigns forever."

In 1965 Stocker & Sitler Leasehold Corporation obtained oil and gas leases from persons each of whom fall into one of three classifications:

1. Successors in title to Richard Montague and Catherine Montague.

2. Walter R. Metzger.

On June 14, 1933, William R. Metzger died and Walter R. Metzger was appointed administrator of his estate. As administrator, Walter R. Metzger obtained, from the Probate Court, an order of sale of mineral rights, following which the sale of mineral rights to G. J. Sears and Laura Sears, his wife, was confirmed by order of the court. Walter R. Metzger who was administrator then individually purchased said mineral rights from G. J. Sears and Laura Sears, his wife.

3. Heirs of William R. Metzger who claim said sale of mineral rights by Walter R. Metzger, administrator of the Estate of William R. Metzger, deceased, to G. J. Sears and Laura Sears, and the subsequent conveyance, by G. J.

Sears and Laura Sears to Walter Metzger, to be invalid. Also, the heirs of Ida C. Metzger, widow of said William R. Metzger, who died intestate May 31, 1950, there being no administration of said estate.

Each of the leases originally, or as amended, provided for the payment of royalties or delay rentals to The Peoples Bank & Savings Company of New Philadelphia to be held by the bank in escrow pending determination of the interest, if any, of each respective lessor and an escrow agreement for such purpose was duly entered into by and between Stocker & Sitler Leasehold Corporation and The Peoples Bank & Savings Company of New Philadelphia, Ohio.

A unitized lease was entered into in accordance with a unitization and pooling agreement. A well was drilled on a 357-acre unitized tract of which the premises in question are a part and commercial gas production was established thereon, on or about November 17, 1965, with additional wells being proposed.

Plaintiffs' prayer was for an order of the court determining the ownership of the mineral interests in and to the tracts described and the division of interest to be made among the several defendants.

The sole question presently before the court is whether the clause hereinbefore set forth was effective to except or reserve unto the grantors the oil and gas underlying the premises conveyed.

The Common Pleas Court adjudged and decreed that oil and gas were not included in the exception set forth in the deed from William R. Metzger and Ida C. Metzger to Richard Montague and Catherine Montague, but passed by the grant of said deed, as recorded in Volume 173, Page 489 of the Deed Records, Tuscarawas County, Ohio. to Richard Montague and Catherine Montague their heirs and assigns. Therefore, the court entered judgment against those claiming as heirs of William R. Metzger or Ida C. Metzger, and those claiming by later purchase from the estate of William R. Metzger, and retained the cause for further hearing and presentation of evidence relevant

to the claims of those claiming as successors to the title obtained by Richard Montague and Catherine Montague. With one or two exceptions, the deed to every successor in title has contained an exception worded identical to that contained in the deed from William and Ida Metzger to Richard and Catherine Montague dated October 30, 1914, and recorded in Volume 173, page 489.

Had the Common Pleas Court adjudged and decreed that the grantors, William R. Metzger and Ida C. Metzger, and the grantees Richard Montague and Catherine Montague, did intend to except and reserve unto the grantors their heirs and assigns the oil and gas underlying the premises conveyed, the oil and gas would not have been conveyed to Richard Montague and Catherine Montague and they would not thereafter be able to convey anything more than they had received, in which event the cause would have been retained by the Common Pleas Court for determination of ownership of oil and gas interests as between the heirs of William R. Metzger, deceased, and Ida C. Metzger, deceased, and the purchasers from the Estate of William R. Metzger, deceased, and their assignee.

Depending upon the state, selected cases can be found to support most any conclusion which might be reached. Most states hold that the exception or reservation may be in general terms and that an exception of "minerals" as used in real property instruments, includes oil and gas, unless a contrary intention or an ambiguity is manifested by the language of the instrument as a whole. Annotation, 37 A. L. R. 2d 1440, 1441. On the other hand, Pennsylvania cases hold that a deed exception or reservation of minerals does not include oil and natural gas, at least unless such intention is affirmatively and convincingly proved in the particular case. *Bundy* v. *Myers,* 372 Pa. 583, 94 A. 2d 724; *Dunham and Short* v. *Kirkpatrick,* 101 Pa. 36; *Silver* v. *Bush,* 213 Pa. 195, 62 A. 832; and *Preston* v. *South Penn Oil Co.,* 238 Pa. 301, 86 A. 203.

In *Ahne* v. *Reinhart and Donovan Co.,* 240 Ark. 691, 696, 401 S. W. 2d 565, the Supreme Court of Arkansas, on April 18, 1966, held:

"Where there is ambiguity as to minerals actually embraced in instruments purporting to convey or to reserve certain unspecified minerals under generalized terms as to minerals, a fact question is presented as to the true intent of the parties; and in such cases the contemporary facts and circumstances surrounding the execution of the instrument are admissible in evidence on the question. Furthermore, the intent of the parties will be determined so as to be consistent with and limited to those minerals commonly known and recognized by legal or commercial usage in the area where the instrument was executed."

Whereas, in *New Mexico and Arizona Land Co.* v. *Elkins* (1956), 137 F. Supp. 767, the United States District Court in New Mexico held that under reservation in a deed of "all oil, gas and minerals underlying or appurtenant to said lands" extrinsic evidence as to the intentions of the parties was not admissible since the language of the reservation was clear, definite and unequivocal and further that a deed reservation of "all oil, gas and minerals" included uranium and thorium which are minerals, and it was immaterial to the validity of the reservation whether, at the time of the conveyance, the parties thereto knew what minerals were or were not present on the land. At page 771 in the opinion this is referred to as the majority rule and the best reasoned and modern rule, in support of which numerous cases are cited.

The North Dakota Legislature by statute in 1955 provided:

"No conveyance of mineral rights or royalties separate from the surface rights in real property in this state, excluding leases, shall be construed to grant or convey to the grantee thereof any interest in and to any gravel, coal, clay or uranium unless the intent to convey such interest is specifically and separately set forth in the instrument of conveyance. No lease of mineral rights in this state shall be construed as passing any interest to any minerals except those minerals specifically included and set forth by name in the lease. . . . The use of the words 'all other minerals' or similar words of an all inclusive nature in

any lease shall not be construed as leasing any minerals except those minerals or their by-products set forth in the lease." Laws of North Dakota 1955, Chapter 235, North Dakota Revised Code of 1943, 47-1024 (1957 Supp.).

In *Atwood* v. *Rodman*, 355 S. W. 2d 206, the Texas Court of Civil Appeals held that the grantor reserving or conveying oil, gas and "other minerals" did not intend to and in effect did not reserve or convey limestone, caliche or surface shale, and surface owners were entitled to recover sand, clay, gravel, caliche and limestone which could be recovered or removed by open-pit or quarry method.

By use of the words, *supra,* as contained in the 1914 deed from William R. Metzger and Ida C. Metzger to Richard Montague and Catherine Montague what, if anything other than coal, did the grantors except or reserve unto themselves under the law of Ohio?

In *Gill* v. *Fletcher,* 74 Ohio St. 295, the Supreme Court of Ohio in paragraphs 1 and 2 of the syllabus held:

"1. Whether the language used in a deed creates a reservation or exception from the grant depends upon the intention of the parties as evinced by a construction of the whole instrument in the light of the circumstances of each case.

"2. Where the owner of a fee simple estate in lands conveys the lands to another in fee simple, reserving one-half of the mineral which may thereafter be found on said land and declaring that the grantee, his heirs and assigns shall have and hold the land and its appurtenances, 'the half of the mineral only excepted,' such conveyance creates an exception to the grant, leaving in the grantor and his heirs a fee simple estate in one-half of the mineral separate and distinct from the estate in the surface and the other half of the mineral conveyed to the grantee."

For another case holding that by an exception or reservation contained in a deed, a fee simple title to the minerals was retained in the grantor; see *Sloan* v. *Lawrence Furnace Co., 29 Ohio St. 568. The syllabus reads:

"The words 'reserving all the minerals underlying the soil,' in the granting clause of a deed for the convey-

ance of real estate, constitute, *prima facie,* an exception of the minerals from the operation of the grant."

Also, see *Kelley* v. *Ohio Oil Co.,* 57 Ohio St. 317; and *Moore* v. *Indian Camp Coal Co.* 75 Ohio St. 493.

The foregoing cases, recognizing that mineral rights in place may be corporeal and subject to exception or reservation in fee simple, have never been overruled by the Supreme Court of Ohio. See, however, *Back* v. *Ohio Fuel Gas Co.,* 160 Ohio St. 81, which is distinguishable because an instrument in the form of a deed was construed as being in effect a license to remove oil and gas and it was therefore held that the recording of the instrument in question in the record of leases was sufficient to constitute constructive notice of the existence, operation and effect of the instrument to the plaintiff as a subsequent purchaser of the land in question.

It is important to note that the exception or reservation in the instant case was made unto the grantors, their heirs and assigns forever, and therefore could not be construed as personal unto them so as to expire on the death of such grantors.

The parties are deceased. Parole subjective testimony as to the intent of the parties could not be used to vary the terms of a written contract. The only objective evidence of circumstances is that there had been 289 oil and gas leases recorded in Tuscarawas County Lease Records from January 1, 1913, to the date of execution of the deed on October 30, 1914, and that prior to October 30, 1914, oil had been struck on the Anderson farm. There was testimony that Mr. Metzger sold for less than he paid but this could be because of the exception of coal alone. We agree with the contention of counsel for the appellees that parole evidence is inadmissible to contradict or change the legal effect of a deed in determining the nature of the estate conveyed. As stated by the Supreme Court of Ohio in *Gill* v. *Fletcher, supra* (74 Ohio St. 295), paragraph one of the syllabus:

"Whether the language used in a deed creates a reservation or exception from the grant depends upon the

intention of the parties as evinced by a construction of the whole instrument in the light of the circumstances of each case."

A deed is to be construed most strongly against the grantor. Language used cannot be overlooked or thrown out of the instrument but must be considered. The whole contract must be considered in arriving at the meaning of any of its parts, the object being to ascertain and give effect to the intention of the parties. Terms are to be understood in their plain, ordinary, and popular sense, unless they have acquired a particular technical sense in the known usage of the trade.

In *Gordon* v. *Carter Oil Co.* (1924), 19 Ohio App. 319, decided by this Fifth District Court of Appeals, following the granting clause of the deed from Gordon to Appleyard appeared the words:

"All the coal and other minerals under the surface of the following real estate: [Here 80 acres of land are described.]"

Following a description of the land, this language was used:

"With a right at any time in said Arthur E. Appleyard, trustee, his heirs and assigns, to enter upon said land, make all excavations, drains, entries, and structures of whatever nature as may be necessary to conveniently take out said minerals, with a right of way over and across said land for the purpose of transferring said minerals from said land, doing no unnecessary damage and injury to said property."

The court, relying on *Detlor* v. *Holland,* 57 Ohio St. 492, said in the concluding paragraph of the opinion:

"While the *Detlor case* is not absolutely on 'all fours' with the case at bar, yet it is so akin to it that we find and hold that the rule of law there laid down when applied to the instant case is decisive of the issue here raised, in favor of the plaintiffs and against the defendants."

Judgment was thus rendered holding that by such deed the parties did not intend to convey the oil and gas under the land.

In *Detlor* v. *Holland, supra* (57 Ohio St. 492), a conveyance in mining rights in lands was made as follows:

"do hereby grant, bargain, sell and convey to the said Michael L. Deaver, his heirs and assigns forever, all the coal of every variety and all the iron ore, fire clay and other valuable minerals in, on, or under the following described premises, * * * together with the right in perpetuity to the said Michael L. Deaver, or his assigns, of mining and removing such coal, ore, or other minerals, and the said Michael L. Deaver, or his assigns, shall also have the right to the use of so much of the surface of the land as may be necessary for pits, shafts, platforms, drains, railroads, switches, sidetracks, etc., to facilitate the mining and removal of such coal, ore, or other minerals and no more."

The court held that such deed did not convey title to the petroleum oil and natural gas described in the deed. In considering the circumstances, the court, in the opinion at page 503, said oil was then produced in small quantities within from ten to twenty miles of the lands, but there is nothing to show that the parties to the conveyance had any knowledge thereof. At page 504, the court stated that the words "other minerals," or "other valuable minerals" taken in their broadest sense would include petroleum oil; but the question here is, did the parties intend to include oil in the mining right? Taking all the terms of the conveyance in light of the surrounding circumstances, the court then said there was nothing to show that it was the intention of the parties that oil should be included in the meaning of minerals, pointing out that upon considering the deed in its entirety the easements granted in connection with the mining right are not applicable to producing oil and thus show that oil was not intended to be included in the conveyance.

In the instant case, we are not confronted with such restrictive easements, the easements retained being broad enough in scope to be applicable for the production of oil and gas.

Four years after deciding the case of *Gordon* v. *Carter*

*Oil Co., supra,* this Fifth District Court of Appeals decided the case of *Hardesty* v. *Harrison,* 6 Ohio Law Abs. 445, involving construction of a deed executed in 1919 by which Margaret Harrison conveyed to Warren B. Ferris all the coal, clay and mineral rights on the northeast quarter section of Section 26, Prairie Township, Holmes County, Ohio. The court in an opinion written by Judge Lemert and concurred in by Judge Houck who had written the opinion in *Gordon* v. *Carter Oil Co., supra,* determined the language of the deed to show the parties contemplated nothing less general than all the substances legally cognizable as minerals; and held at page 446:

"Since oil and gas are minerals and there is nothing in the language of the deed in question which shows that the parties contemplated something less general than all substances legally cognizable as minerals, we conclude that the title to the oil and gas necessarily passes by the conveyance."

In 1935 this court decided the case of *Anderson* v. *Pryor,* 51 Ohio App. 35. The granting and habendum clauses each conveyed a fee simple title with no exceptions or reservations. Following the habendum clause, the deed contained this language:

"And we, the said William L. Deitrick and Clara A. Deitrick, for ourselves, our heirs and assigns, do hereby covenant with the said grantee that we are lawfully seized in fee of the premises hereinbefore described, and that said premises are free from all encumbrances whatsoever, excepting the June, 1913, taxes, and thereafter, which the said grantee assumes and agrees to pay, and also excepting the coal underlying said land, which said grantors reserve, and it is the intention of this deed to convey only the surface of said ground."

It is noted that the only reservation was the coal underlying the land and the court held the words "it is the intention of the deed to cover only the surface of the ground," not to expand the reservation which specified only coal. However, it is more important to note that there was no exception or reservation contained in the granting clause and the court at page 37 stated:

"From the earliest times the decisions are uniform that where there is a clear and manifest repugnance between the premise and the habendum clauses of a deed, the former must prevail, and the doctrine is no less well recognized and maintained now than it was in former days.

"The rule is that where there is an irreconcilable conflict between the two clauses the granting clause must prevail."

We have been unable to find a case in Ohio or elsewhere construing the effect of an exception or reservation contained in the granting clause of the deed and reading:

"all veins of coal and other substances of value underlying said above conveyed premises, together with all necessary rights of way and privileges of entry thereon to remove same, unto them, their heirs and assigns forever."

We are certain, however, that if one were to ask any oil and gas man or any layman to name substances of value underlying premises, each would give oil and gas high priority among the substances named. The cases definitely do not hold that because coal is specified other exceptions or reservations in general terms are precluded.

By the words used in the deed, the designation of substances has but two qualifications. The first is that they be of value, which can only mean of such worth as to make feasible their removal. The second is that they are underlying the ground. This can leave no question as to oil and gas but explains why coal, which is frequently stripped from the surface, was separately specified.

It is also important as a matter of policy consideration that continued litgation over the rule applicable in a particular state should be avoided. As pointed out in Williams and Meyers, Oil and Gas Law, page 249, the rule might be:

1. The term "other substances of value underlying the premises" includes oil and gas unless other language in the instrument so restricts the definition of the term to exclude them.

2. The term "other substances of value underlying the premises" does not include oil and gas unless other

language in the instrument indicates that the term has been used with the intent to include them.

The Ohio cases with reference to terms of general description appear to have followed the first rule. In *Sloan* v. *Lawrence Furnace Co.*, 29 Ohio St. 568, the Supreme Court of Ohio, held:

"The words 'reserving all the minerals underlying the soil,' in the granting clause of a deed for the conveyance of real estate, constitute, *prima facie,* an exception of the minerals from the operation of the grant." (Emphasis added.)

We reiterate the finding in *Hardesty* v. *Harrison, supra* (6 Ohio Law Abs. 445), wherein this Court of Appeals at page 446 said:

"Since oil and gas are minerals and there is nothing in the language of the deed in question which shows that the parties contemplated something less general than all substances legally cognizable as minerals, we conclude that the title to the oil and gas necessarily passes by the conveyance."

The terms of the deed being undisputed and there being no other disputed admissible evidence, the question is solely one of law, and this court is not bound by those conclusions of the trial court which we find to be contrary to law.

When the descriptive portion of the granting clause of a deed excepts and reserves unto the grantors all the veins of coal and other substances of value underlying the conveyed premises, together with all necessary rights of way and privileges of entry thereon to remove same, unto them, their heirs and assigns forever, and there is nothing in the language of the deed in question which shows that the parties contemplated something less general than all substances of value underlying the premises, which would include oil and gas, we conclude that a fee simple title to the oil and gas in place, of such value as to make its removal feasible, was excepted and reserved by the grantors, together with the right and privilege to remove same. There was no conveyance of the oil and gas which

was excepted and reserved unto the grantors by the terms of the deed.

Were we to require express designation by name, we would by judicial decree infringe upon the right of the parties to express their intent by contract. If such specific designation is to be required, the fixing of such requirements should be a function of the Legislature.

For the reasons stated, the judgment of the Common Pleas Court is reversed. Final judgment is rendered adjudging that the exception and reservation as contained in the premises description of the granting clause of the deed included oil and gas of which there was no conveyance, the fee simple title thereto being retained by the grantors, together with the right and privilege necessary for the removal.

It is further adjudged that judgment be rendered against those parties who claim as assignees and successors in title to Richard Montague and Catherine Montague, and this cause is remanded to the Common Pleas Court for further determination of interests as between those claiming as heirs of William R. Metzger or Ida Metzger and those claiming by purchase from the estate of William R. Metzger, deceased, or their successors or assigns.

*Judgment reversed, final judgment rendered and cause remanded for further proceedings.*

VAN NOSTRAN and PUTMAN, JJ., concur.