WISEMAN et al., Appellees,

v.

CAMBRIA PRODUCTS COMPANY, Appellant, et al.

[Cite as *Wiseman v. Cambria Products Co.* (1989), 61 Ohio App.3d 294.]

Court of Appeals of Ohio,
Lawrence County.

No. 1869.

Decided Feb. 16, 1989.

*Charles David Payne,* for appellees.

*George M. Hauswirth,* for appellant.

HOMER E. ABELE, Presiding Judge.

This is an appeal from a Lawrence County Common Pleas Court summary declaratory judgment which found that the words used in a 1894 severance deed "and other minerals" did not include oil and gas.

We reverse.

Assignment of Error I

"The trial court erred in holding that the exception and reservation of 'all the coal, iron ore and other minerals, in, on and underlying' the land at issue in a deed dated August 17, 1894 from Ironton Coal and Iron Co. to Andrew Neal, recorded in deed book 59, page 241, did not include the right to oil and gas."

■ Appellees filed their complaint stating the 1894 deed from the Ironton Coal and Iron Company to Andrew Neal conveyed real estate "including therein the rights to certain minerals." The deed conveyed seventy-five acres of land in the northeast quarter of the southwest quarter of section 7, town 4 Aid Township; Range 17, of Lawrence County, Ohio, excepting and reserving minerals as follows:

"Excepting and reserving, nevertheless, all the coal, iron-ore *and other minerals* in, on and underlying the above-designated and described lands, together with full and free rights of ingress, egress, regress and of way, and other necessary or convenient rights and privileges, in, upon, under and over the same for the purpose of mining, removing, and taking away as well the coal, iron-ore and on and underlying the said land as other coal, iron-ore and minerals, in, to and from adjoining and adjacent lands, without being in any way liable for any damage or injury which may be done to the lands hereby conveyed, or to any waters or water-courses therein or thereon, by reason of the mining, removing and taking away of said coal, iron-ore or other minerals." (Emphasis added.)

Appellees obtained equitable title to the seventy-five acres and another one hundred eighty-eight acres in 1975 by virtue of a land contract which mentioned that Ironton Coal and Iron Company "holds the mineral rights" on the seventy-five acres and stated "buyer acknowledges the oil and gas lease held by Miles Production Company." The land contract specifically mentioned the reservation of all the "coal, iron ore and *other minerals*" in the 1894 deed. Our review of the land contract reveals no merit to appellees' allegation that "this Land Contract specifically sets forth that the oil and gas rights were being conveyed in this Land Contract."

Appellees' complaint further alleges "traditionally * * * said oil and gas rights were considered to have been maintained in the landowners through the 1894 conveyance." In this regard, appellees attached to their complaint a 1967 oil and gas lease from a Mr. & Mrs. Dearfield to the Sun Oil Company covering two hundred sixty-three acres in Section 7, Township 4, Range 7, and a 1981 oil and gas lease from appellees and their land contract vendors to Mitchell Energy Corporation ("Mitchell") covering two hundred sixty-three acres in Section 7, Aid Township (no range given). The court below did not

mention either the 1967 or the 1981 oil and gas lease in its judgment entry. The parties do not mention the leases on appeal.

Appellees allege that Cambria Products Company ("Cambria") claims ownership of the oil and gas under the seventy-five acres through a line of title arising from Ironton Coal and Iron Company conveyances other than the 1894 deed. Appellees further allege that Mitchell claims rights to the same oil and gas through a 1985 lease from Cambria which includes the same seventy-five acres listed in the 1894 deed.

Mitchell answered the complaint by claiming the oil and gas rights under the seventy-five acres by virtue of the 1985 oil and gas lease from Cambria. Cambria answered the complaint by specifically denying that the 1894 deed "conveyed any minerals, specifically oil and gas" to Andrew Neal and his successors in title.

Appellees moved for summary judgment, noting that the controversy between the parties arose from the 1894 deed. In their memorandum in support of the motion, appellees focused on whether the 1894 deed's reservation of coal, iron ore and *other minerals* included oil and gas. Appellees claimed the Ohio Supreme Court, in *Detlor v. Holland* (1898), 57 Ohio St. 492, 49 N.E. 690, stated that "other minerals" does not include oil and gas. Appellees noted two unrelated Lawrence County deeds from the Ironton Coal and Iron Company in 1897 specifically mentioned oil and gas when reserving mineral rights.

In its memoranda contra appellees' motion for summary judgment, Cambria asked the court to grant summary judgment in its favor. Mitchell's motion for summary judgment adopted the arguments made by Cambria. Cambria argued that the *Detlor* court, at 504, 49 N.E. at 692, agreed:

"The words 'other minerals,' and 'other valuable minerals,' taken in their broadest sense, would include petroleum oil * * *."

The *Detlor* court held the "other mineral" language in the deed in that case was limited by the fact that the easements conveyed in the deed specifically mentioned pits, shafts, railroads, platforms, switches, and sidetracks, all of which are necessary for mining minerals in place, but the easements did not mention any of the items necessary for mining minerals of a migratory nature such as oil and gas. The court reasoned that if the parties had intended the "other minerals" language to include oil and gas, the easements granted would have additionally mentioned derricks, pipe lines, tanks, and machinery used in drilling and operating oil and gas wells.

In response to appellees' assertions regarding the two 1897 deeds from the Ironton Coal and Iron Company which specifically mentioned oil and gas,

Cambria noted that when practitioners of the time became aware that the "other minerals" language might be challenged in court, they began to specifically mention oil and gas. Cambria further noted that in *Kelly v. Ohio Oil Co.* (1897), 57 Ohio St. 317, 49 N.E. 399, paragraph one of the syllabus, the court specifically held "petroleum oil is a mineral * * *."

Appellees responded by arguing that while *Kelly* held petroleum is a mineral, *Kelly* also held that since oil and gas move from place to place, there can be no ownership of them separate and distinct from the land. We disagree with appellees' characterization of *Kelly*. The *Kelly* court stated, at 328, 49 N.E. at 401:

"Petroleum oil is a mineral, and *while in the earth it is part of the realty*, and should it move from place to place by percolation or otherwise, it forms part of that tract of land in which it tarries for the time being, and if it moves to the next adjoining tract, it becomes part and parcel of that tract; and it forms part of some tract, until it reaches a well and is raised to the surface, and then for the first time it becomes the subject of distinct ownership separate from the realty, and becomes personal property * * *." (Emphasis added.)

Nowhere does *Kelly* state that the person who owns the surface must always own the oil and gas underneath the land. Nowhere does *Kelly* state that surface owners cannot sever their ownership of oil and gas underneath their lands from their ownership of the land surface. Curiously, we note that appellees earlier argued the two 1897 deeds from Ironton Coal and Iron Company to parties unrelated to this action (which two deeds appellees cited in support of their motion for summary judgment) severed the oil and gas rights from the surface of the land.

The trial court found the only dispute between the parties involves the meaning of the term "other minerals" as used in the 1894 deed from the Ironton Coal and Iron Company to Andrew Neal. The court determined that the term meant only solid minerals and granted summary judgment to appellees. The court wrote:

" * * * There is no doubt in the court's mind that the terms 'minerals' or 'other valuable minerals' would include all types of solid substances. .

"Liquid substances, in the broadest possible definition, would include not only petroleum oil but also water whether it had fallen from the sky and soaked into the ground or whether it came from a subterranean stream. Under the broadest possible definition if a person owned all the 'liquids' under the surface of the ground a person who only owned the surface could not use it to grow crops, use a well for their own residential purposes or do any one of

a number of other activities due to the fact that they could receive no liquids from beneath the surface.

"  *   *   *

" * * * There is nothing included, following the reasoning in *Detlor*, which would show that anything other than solid minerals were contemplated by the parties."

Cambria filed a timely appeal from the court's summary judgment, arguing the 1894 deed term "other minerals" includes oil and gas. In addition to citing *Kelly, supra*, from the case at bar, Cambria cited two cases from the Ohio Fifth District Court of Appeals where the court held the term "other minerals" includes oil and gas.

In *Stocker & Sitler, Inc. v. Metzger* (1969), 19 Ohio App.2d 135, 48 O.O.2d 254, 250 N.E.2d 269, the court held that the phrase "other substances of value" includes oil and gas where nothing in the deed indicated the parties intended to convey less that all substances of value under the surface. *Stocker* distinguished itself from *Detlor* where the easements listed in the deed were not applicable to the production of oil and gas. *Stocker* at 143, 48 O.O.2d at 258, 250 N.E.2d at 274, noted the easements in its deed were "broad enough in scope to be applicable for the production of oil and gas."

In the case at bar, the 1894 deed mentions no specific items, but rather reserved to the mineral holder a broad range of rights: " * * * full and free rights of ingress, egress, regress and of way, and *other necessary or convenient rights and privileges*, in, upon, under and over the (lands) * * *." (Emphasis added.)

The above reservation of rights, like the easements in *Stocker*, is broad enough to be applicable for the production of oil and gas.

In *Hardesty v. Harrison* (1928), 6 Ohio Law Abs. 445, the court held that since oil and gas are minerals and there was nothing in the deed to restrict the term "all mineral rights" to something less than all minerals, the deed included oil and gas. The court stated at 446:

"We believe it is a well settled law that petroleum oil is a mineral and is a part of the realty, like coal, iron and copper. A grant without qualifying or limiting words of the minerals underlying certain real estate will include oil and gas."

We agree with appellant's contention that the term "other minerals" in the 1894 deed in the case at bar included oil and gas. Nothing in the deed qualified or limited the term "other minerals." As discussed above, the

*Detlor* case is easily distinguished from the case at bar. In *Kelly* the court clearly held oil and gas are minerals.

Appellant's first assignment of error is sustained.

Assignment of Error II

"The trial court erred in reviewing and basing its holding upon a deed from Andrew Neal to Ironton Coal and Iron Co. which was not a part of the record before the court."

The trial court took judicial notice of a deed from Andrew Neal to the Ironton Coal and Iron Company which was dated the same day and recorded in the same deedbook as the 1894 deed in question, but which involved two different parcels of land. The Neal–Ironton deed granted "all the stone coal" and did not mention or refer to any other minerals.

When applying *Detlor* to the case at bar, the trial court noted that the surface easements in the Neal–Ironton stone-coal-only deed and in the Ironton–Neal deed in question are virtually identical. Thus, the court apparently reasoned, the Ironton–Neal deed contemplated only the removal of solid minerals.

We disagree with the court's apparent reasoning. As we discussed under appellant's first assignment of error, the surface rights granted in the deed in question are broad enough to be applicable to the production of oil and gas. We find the Neal–Ironton deed sheds no light on the meaning of the term "other minerals" as used in the deed in question.

The question posed by this assignment of error, however, is whether the court erred by taking judicial notice of the Neal–Ironton deed. Appellant contends judicial notice of the Neal–Ironton deed constituted judicial notice of an "adjudicated fact." Appellant also contends the court erred by taking judicial notice after "all proceedings had stopped." Appellant further contends the Neal–Ironton deed is not part of the record.

■ We find the Neal–Ironton deed to be a proper subject of judicial notice. Evid.R. 201(B) permits courts to take judicial notice of facts which are not subject to reasonable dispute and which are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Appellant cites no authority which would prevent the court from taking judicial notice after a hearing or trial. Quite to the contrary, Evid.R. 201(F) permits courts to take judicial notice "at any stage of the proceeding." With regard to appellant's contention that the Neal–Ironton deed is not part of the record, we note appellant cites no authority which would require a court taking judicial notice of a deed to make that deed part of the court record.

█ Lastly, appellant contends the Neal–Ironton deed is irrelevant to the case at bar. We agree. As discussed above, we find the deed sheds no light on the meaning of the term "other minerals" as used in the Ironton–Neal deed. For this reason, we sustain appellant's second assignment of error.

Based on the foregoing, the judgment of the trial court is reversed. Pursuant to App.R. 12(B) final judgment is hereby entered in favor of the appellant.

*Judgment reversed.*

STEPHENSON, J., concurs in part and dissents in part.

GREY, J., concurs in part and dissents in part.

STEPHENSON, Judge, concurring in part and dissenting in part.

I concur in the judgment but dissent from the portion of the majority opinion which holds a court may take judicial notice of deeds in the county recorder's office, which deeds were not introduced at trial.

GREY, Presiding Judge, concurring in part and dissenting in part.

I concur in the sustaining of assignment of error one.

The problem in this case, as I see it, is that the cases cited above seem to be contradictory. Cf. *Kelly v. Ohio Coal, supra,* and *Detlor v. Holland, supra.* The word "minerals" is used to mean different things.

Most basically, a mineral means an inorganic element or compound. To that extent, the subsurface of any piece of ground is composed almost entirely of minerals. Coal, oil and gas being organic or the result of organic processes are not true minerals from a geological standpoint.

Mineral also means, however, an economically valuable or potentially valuable substance which can be removed from the subsurface.

The apparent ambiguity in the cases comes from these two different meanings, *i.e.,* when the deed says "all minerals," is the word used geologically or economically? This is why the cardinal rule is to look to the intent of the parties to *that* deed. *Gill v. Fletcher* (1906), 74 Ohio St. 295, 78 N.E. 433. In *Detlor, supra,* the court did not make a finding that the word "minerals" does not include oil and gas, but rather that the intention of the parties *to that deed* was that minerals included only coal. Conversely, in *Stocker, supra,* it was held that the reservation of the mineral estate by the grantor *to that deed* was intended to reserve the oil and gas as "other substances of value."

Ordinarily, the meaning of a conveyance is determined by examining the matter contained within the four corners of the document, and ordinarily this

can be done by summary judgment. In this case, however, summary judgment is inappropriate because after a review of the document the question of whether the parties intended a comprehensive, geological use of the word mineral, or a restrictive economic use of the word, remains an open question.

I concur in the part of the second assignment of error which says that a court may judicially notice a public record. I would add, however, that the official record must be authenticated and included in the record.

I dissent from the holding that the Neal–Ironton deed is irrelevant. It is, in my opinion, the most persuasive evidence in this case as to what the parties intended.