[Cite as *Sheba v. Kautz*, 2017-Ohio-7699.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| GEORGE SHEBA et al., | ) | CASE NO. 15 BE 0008 |
| | ) | |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| PATRICIA L. KAUTZ et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANTS. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from the Court of Common Pleas of Belmont County, Ohio Case No. 13 CV 399

JUDGMENT:     Affirmed.

APPEARANCES:

For Plaintiffs-Appellees:     Atty. Melanie Morgan Norris
Atty. Michelle Lee Dougherty
Atty. Timothy McKeen
Steptoe & Johnson PLLC
1233 Main Street, Suite 3000
 P.O. Box 751
 Wheeling, West Virginia 26003-0751

For Defendant-Appellant:     Atty David K. Schaffner
Schaffner Law Offices, Co., L.P.A.
132 Fair Avenue, NW
New Philadelphia, Ohio 44663

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated: September 18, 2017

ROBB, P.J.

**{¶1}** Defendants-Appellants Patricia Kautz, et al. appeal the decision of the Belmont County Common Pleas Court granting summary judgment in favor of Plaintiffs-Appellees George Sheba, et al. The trial court's decision finding the mineral interest was abandoned under the 1989 version of the Dormant Mineral Act cannot be upheld due to intervening precedent from the Ohio Supreme Court. However, the trial court alternatively held the grantor in an 1848 deed did not reserve oil and gas interests as the use of the term "mineral" in the reservation showed the intent of the parties to the deed was to reserve coal and other mined minerals, not migratory minerals.

**{¶2}** The grant of summary judgment is affirmed based upon: the Supreme Court's *Detlor* holding which found an 1890 deed did not transfer oil and gas interests when it transferred coal and other minerals; the age of the deed in this case which was executed over 40 years earlier than the deed in *Detlor*; the language in the deed as to mining from adjacent property; and the lack of evidence suggesting the parties to the deed contemplated the inclusion of oil and gas as minerals in this Belmont County locality in 1848.

<u>STATEMENT OF THE CASE</u>

**{¶3}** In 1848, Thomas and Sophia Day (hereinafter Day) executed a deed transferring their Belmont County property to Christian Anshutz with the following reservation:

> Said Day however expressly reserves to himself his heirs and assigns the **sole and exclusive right to all the mineral & coal lying under the tract** of land above described **with the right & privilege to mine the same** from his land on the East side thereof, excepting a parcel [11.5 poles wide on the South side] the said Anshutz and his heirs & assigns are to have in fee simple the entire mineral and coal privilege under the said last mentioned tract [re-describing the 11.5 pole strip] also the land above said coal & mineral — The meaning & interest of the above exception is to **reserve the coal and mineral privileges**

**under the whole** of the above described tract of land, to the said Day his heirs & assigns excepting only [the 11.5 pole strip]; but the said Day his heirs & assigns are not to enter upon any part of the same **to mine for said coal & mineral**, but may enter [ __?__[1]] under only from his own land on the East and Northeast side thereof. To have and to hold the above tract of land with all the appurtenances thereof excepting as above exception * * *. (Emphasis added.)

**{¶4}** Mr. Sheba owns the property Day transferred in 1848 subject to the above reservation. On May 14, 2013, Mr. Sheba executed an oil and gas deed granting Ridgetop Resources, LLC an undivided interest in certain property, including 210 acres subject to the Day reservation. Mr. Sheba published a notice of abandonment of the Day mineral interest on July 24, 2013 and filed an affidavit of abandonment on September 3, 2013. An attorney for Mrs. Kautz and three other heirs of Day filed a claim to preserve the mineral interest on September 23, 2013.

**{¶5}** In October 2013, Mr. Sheba and Ridgetop Resources (hereinafter Appellee) filed a complaint against the four heirs (hereinafter Appellant). A second amended complaint added more defendants in May 2014. In seeking declaratory judgment and quiet title, the complaint set forth four claims: (1) the 1848 reservation did not reserve title to oil and gas under the property; (2) the oil and gas interest was abandoned under the 1989 version of the Dormant Mineral Act (DMA) due to the lack of a savings event; (3) the oil and gas interest was abandoned under the 2006 version of the DMA due to the lack of a savings event and the failure of the holder to file a claim to preserve within 60 days of the publication of the notice of abandonment; and (4) adverse possession of the oil and gas interest. As to the adverse possession claim, the complaint stated Mr. Sheba actively leased the oil and gas interest since 1976, including leases recorded in 1979, 2005, and 2011.

---

[1] The deed is handwritten. This mystery term may be "& leafe" (or "leaf") representing the word "leave" based on: it is the opposite of "enter" which was used just before the mystery word; it would thus define the grantor's right to "enter & leave under only from his own land"; and this corresponds to a typical deed reference to the means of ingress and egress. Or, the mystery term may be "& pass" (as translated in a later deed transferring the land to Mr. Sheba).

**{¶6}** Appellant filed an answer asserting the Days did reserve the oil and gas under the property, the 1989 version of the DMA was inapplicable and unconstitutional, the 2006 version of the DMA applied, the notice of abandonment was improper, a claim to preserve was filed, and adverse possession did not occur. A counterclaim was filed seeking quiet title and damages for trespassing and conversion.

**{¶7}** Appellee filed a motion for summary judgment on the first three counts arguing: the 1848 reservation did not include oil and gas; the mineral interest was automatically abandoned under the 1989 DMA; and the mineral interest was abandoned under the 2006 DMA. Appellant filed a memorandum in opposition, and Appellee filed a reply. The Ohio Attorney General intervened to support the constitutionality of the 1989 version of the DMA. On January 20, 2015, the trial court granted the Attorney General's motion for partial summary judgment and ruled the 1989 DMA was not unconstitutional.

**{¶8}** On January 26, 2015, the trial court granted summary judgment in favor of Appellee. As to the first claim, the trial court found the two references to "mining" in the 1848 reservation demonstrated the intent to reserve only coal and other minerals that are mined rather than migratory minerals such as oil and gas. The trial court quoted the following passage from the Ohio Supreme Court's 1898 *Detlor* case: "There is nothing to show that it was the intention of the parties that oil should be included in the word 'minerals,' and the easements granted, in connection with the mining right, are not applicable to producing oil, and show that oil was not intended to be included in the conveyance." *Detlor v. Holland*, 57 Ohio St. 492, 504, 49 N.E. 690, 693 (1898) (if the intent was to reserve oil and gas, "apt words" to express this intention would have been used in the reservation).

**{¶9}** As to the claim set forth under the 1989 DMA, the trial court concluded abandonment was automatic where no savings event occurred within the twenty-year look-back window, noting Appellant admitted there were no savings events. The court reiterated its prior decision finding the 1989 DMA was not unconstitutional. As to the claim set forth under the 2006 DMA, the trial court stated: "any discussion of

RC. 5301.56, effective June 30, 2006 is moot in that any oil and gas interests which the Defendants may have claimed would have been abandoned as of March 22, 1992" under the 1989 DMA. Appellant filed a timely notice of appeal.

<u>ASSIGNMENTS OF ERROR ONE & TWO: 1989 DMA</u>

**{¶10}** Appellant's first two assignments of error provide:

"The trial court erred in applying the 1989 version of the Ohio Dormant Mineral Act to the subject case."

"The trial court erred in determining that the 1989 Dormant Mineral Act 'automatically' vested the mineral interests in the surface owners."

**{¶11}** The Ohio Supreme Court ruled the 1989 DMA was not self-executing and did not result in automatic abandonment of a mineral interest. *Albanese v. Batman*, 148 Ohio St.3d 85, 2016-Ohio-5814, 68 N.E.3d 800 ¶ 17-18, citing *Corban v. Chesapeake Exploration, L.L.C.*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089. Because the complaint seeking abandonment of the mineral interest was filed after the 2006 amendments to the Dormant Mineral Act, the Supreme Court's holding in *Corban* is dispositive of these assignments of error. *See Albanese*, 148 Ohio St.3d 85 at ¶ 16. In other words, at the time the 2013 complaint was filed, the 1989 DMA could no longer be applied. Consequently, both parties agree the trial court's decision finding the mineral interest was automatically abandoned under the 1989 DMA was erroneous and these assignments of error have merit.

<u>ASSIGNMENT OF ERROR NUMBER THREE</u>

**{¶12}** Appellant's third assignment of error contends:

"The trial court erred in finding that the language 'all the minerals and coal' in a reservation did not include Oil and Gas."

**{¶13}** The purpose of contract or deed construction is to discover and effectuate the intent of the parties, which is presumed to reside in the language they chose to use in their agreement. *Graham v. Drydock Coal Co.*, 76 Ohio St.3d 311, 313, 667 N.E.2d 949 (1996) (coal reservation found not to include right to strip-mine where deed used language peculiarly applicable to deep mining and surface integrity). "Extrinsic evidence is admissible to ascertain the intent of the parties when

the contract is unclear or ambiguous, *or when circumstances surrounding the agreement give the plain language special meaning.*" (Emphasis added.) *Id.*, citing *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992).

{¶14} The parties contest the trial court's application of the Ohio Supreme Court's holding in *Detlor* to this case. Appellant believes the trial court improperly focused on the deed's reference to "mining" to impute an intent to reserve only coal and minerals that are mined as opposed to migratory minerals such as oil and gas. Appellant relies on this court's *Coldwell* case, the Fourth District's *Jividen* and *Wiseman* cases, and the Fifth District's *Hardesty* case, which interpreted the phrase "other minerals" as conveying oil and gas (under the circumstances presented in those cases). Appellant focuses on the word "all" in the reservation clause "all the mineral and coal" and urges this is equivalent to saying "every mineral" or "every part of the mineral," citing *Black's Law Dictionary* and *Merriam-Webster Dictionary*. Appellant also states the deed's use of the word "and" in "all the mineral and coal" or "the coal & mineral privileges" shows an intent to retain more than coal. As to this latter argument, the trial court did not hold the deed only conveyed coal, and Appellee did not argue such a theory; the theory was the deed conveyed only non-migratory minerals capable of being mined.

{¶15} Appellee responds the trial court correctly applied the holding in *Detlor* to the facts of this case involving a deed executed 42 years before the deed interpreted in *Detlor*. Appellee states that, as in *Detlor*, there was restrictive or limiting language in the 1848 deed (where it twice said "to mine"), which indicated the intent to reserve only coal and solid minerals capable of being mined, not oil and gas. Appellee argues the *Hardesty* and *Wiseman* cases are distinguishable (as those deeds had no qualifying or limiting words) and cites two other Fifth District cases, *Muffley* and *Gordon* (where the deed's use of the word "minerals" was *not* found to include oil and gas). Appellee distinguishes this court's *Coldwell* case and the Fourth District's *Jividen* case, where deeds contained "surface only" language.

{¶16} Appellee also notes deed construction involves the intention of the parties *at the time of execution*, which in this case was 1848. Appellee emphasizes

1848 pre-dated the development of oil and gas in Ohio, citing Ogline, *Black Gold: An Oil and Gas Primer for Estate Planners*, 20 Ohio Prob. L.J. 31 (2009), which states: "The first commercial exploration for oil in Ohio took place in 1860 when a well was drilled in Washington County. Natural gas production followed in 1884."[2]

**{¶17}** In general, minerals include oil and gas. *See, e.g.*, Ohio Constitution, Art. II, Section 36 (allowing laws to be passed "to provide for the regulation of methods of mining, weighing, measuring, and marketing coal, oil, gas, and all other minerals"); R.C. 5301.56(A)(4) (defining "mineral" for the DMA). This was also true, in a broad sense, during the time frame pertinent in the Supreme Court's *Detlor* case. *See Detlor v. Holland*, 57 Ohio St. 492, 504, 49 N.E. 690 (1898). *See also Kelly v. Ohio Oil Co.*, 57 Ohio St. 317, 49 N.E. 399 (1897), syllabus ¶ 1 (petroleum oil is a mineral and is part of the realty while it is in the earth, even though it is migratory). The *Detlor* Court construed the following language in an 1890 Perry County deed:

> hereby grant, bargain, sell, and convey to the said Michael L. Deaver, his heirs and assigns, forever, all the coal of every variety, and all the iron ore, fire clay, and other valuable minerals, in, on, or under the following described premises: * * *; together with the right in perpetuity to the said Michael L. Deaver, or his assigns, of mining and removing such coal, ore, or other minerals; and the said Michael L. Deaver, or his assigns, shall also have the right to the use of so much of the surface of the land as may be necessary for pits, shafts, platforms, drains, railroads, switches, side tracks, etc., to facilitate the mining and removal of such coal, ore, or other minerals, and no more.

---

[2] According to this source, oil was first accidentally discovered in Ohio in 1814 in a saltwater well drilled in Noble County. *See* Ogline, *Black Gold.* "Because the oil well was not developed, it was not until several decades later in 1859 that the more famous oil 'discovery' occurred in a commercial oil field in the Allegheny headwaters of the Ohio River at Titusville [Pennsylvania]." Frost and Mitsch, *Resource Development and Conservation History along the Ohio River*, 89 Ohio J. of Science 143, 148 (1989). Colonel Drake successfully drilled the first commercial oil well (or one of the first) in America in 1859 in western Pennsylvania. *Id.* (to a depth of 69 feet). An ODNR publication states William Jeffrey erected the first Ohio oil well in 1859 in Trumbull County soon after Drake's discovery. *Oil and Gas Fields Map of Ohio*, Ohio Department of Natural Resources, Division of Geological Survey Map PG-2 (2004).

*Detlor*, 57 Ohio St. 492 at syllabus ¶ 1. The Supreme Court explained: "The words 'other minerals,' or 'other valuable minerals,' taken in their broadest sense, would include petroleum oil; but the question here is, did the parties intend to include such oil in the mining right?" *Id.* at 504. The Court concluded the language of this deed conveying "other minerals" did not convey title to the oil and natural gas. *Id.* at syllabus ¶ 1.

**{¶18}** The Court set forth "familiar" rules of construction, such as construing the grant most strongly against the grantor and considering the whole contract to arrive at the meaning of any of its parts. "Terms are to be understood in their plain, ordinary, and popular sense, unless they have acquired a particular technical sense by the known usage of the trade. They are to be construed with reference to their commercial and scientific import." *Id.* at 503-504, quoting Barringer and Adams, *Law of Mines and Mining in the United States*, 131. "This rule is of especial importance when the question arises whether a specific mineral is included in a general designation." *Detlor*, 57 Ohio St. at 504, quoting Barringer and Adams, *Law of Mines and Mining in the United States*, 131.

**{¶19}** The Supreme Court explained *the deed must be construed in the light of oil developments in the vicinity of the property at the time the deed was drafted* in February 1890. *Detlor*, 57 Ohio St. at 502-503. The Court observed how oil was produced in small quantities 10 to 20 miles away from the subject property, but nothing indicated the parties knew of this fact. *Id.* at 503 (noting the grantor resided in Wisconsin). The Court also pointed out: "The incidents here granted are all such as are peculiarly applicable to the mining of minerals in place, and not to such as are in their nature of a migratory character, such as oil or gas. Nothing is said about derricks, pipe lines, tanks, the use of water for drilling, or the removal of machinery used in drilling or operating oil or gas wells." *Id.* The Court concluded:

> Taking all the terms of the conveyance in the light of the surrounding circumstances, and in view of the above rule of construction, and upon authority of the case of Dunham v. Kirkpatrick, 101 Pa. St. 36, we conclude that the title to the oil did not pass under said conveyance, but

remained in the owner of the soil, and upon his death passed to his heirs. There is nothing to show that it was the intention of the parties that oil should be included in the word 'minerals,' and the easements granted, in connection with the mining right, are not applicable to producing oil, and show that oil was not intended to be included in the conveyance. If it had been, apt words would have been used to express such intention.

*Detlor*, 57 Ohio St. at 504.

{¶20} The case cited by the Ohio Supreme Court contains what is known as Pennsylvania's *Dunham* rule for private deed conveyances. *See Dunham v. Kirkpatrick*, 101 Pa. 36 (1882). Due to the *Dunham* rule, Pennsylvania applies a rebuttable presumption the word "minerals" in a deed includes only metallic substances and thus would not include oil and gas (unless the deed says otherwise). *Highland v. Commonwealth*, 400 Pa. 261, 276-277, 161 A.2d 390 (1960) (the presumption requires clear and convincing evidence to be rebutted). Pennsylvania rejected the scientific and the commercial definition of minerals in favor of the layman's definition and maintained the definition (even after oil and gas became more well-known as minerals) in order to abide by the established property law in the state. *See Butler v. Charles Powers Estate ex rel. Warren*, 620 Pa. 1, 8-12, 65 A.3d 885 (2013). In other words, this rule applies in Pennsylvania even to new deeds.

{¶21} Although the Ohio Supreme Court cited *Dunham* in *Detlor*, the Court also instructed reviewing courts to consider the time (of deed execution) and locality (of the property) to define minerals. In addition, the Ohio Supreme Court focused on easement language in the deed particular to the mining of coal and hard minerals and the corresponding lack of language relevant to the capture of oil and/or gas. We review the Ohio appellate cases applying the principles in *Detlor*.

{¶22} In *Gordon*, the plaintiff-grantor executed a 1902 Licking County deed granting: "All the coal and other minerals under the surface" with a right "to enter upon said land, make all excavations, drains, entries, and structures of whatever nature as may be necessary to conveniently take out said minerals, with a right of

way over and across said land for the purpose of transferring said minerals from said land, doing no unnecessary damage and injury to said property." The Fifth District quoted from *Detlor,* found the circumstances similar, and concluded the language did not show intent to transfer oil and gas. *Gordon v. Carter Oil Co.*, 19 Ohio App. 319, 321-323 (5th Dist.1924).

**{¶23}** In *Hardesty*, the defendant executed a 1919 Holmes County deed conveying "all the coal, clay and mineral rights." (At the time, she was receiving delay rentals under an oil and gas lease covering her property.) The grantee's right was conveyed in 1923, and the purchaser sued the original grantor claiming the oil and gas was conveyed under the 1919 deed. The defendant testified the intent she shared with the original grantee was that only non-migratory minerals were transferred. The Fifth District found this testimony was barred by the parol evidence rule. *Hardesty v. Harrison*, 6 Ohio Law Abs. 445, 446 (5th Dist.1928). The court then applied the principle: "A grant without qualifying or limiting words of the minerals underlying certain real estate will include oil and gas." *Id.* The court concluded the title to the oil and gas necessarily passed by the conveyance as oil and gas are minerals and there is nothing in the language of the deed showing the parties contemplated something less general than all substances legally cognizable as minerals. *Id.* The court did not cite the Ohio Supreme Court's *Detlor* case.

**{¶24}** In *Muffley*, a 1960 deed reserved to the grantor "all minerals, clay, and coal underlying the soil, subject only to the condition that the removal of said minerals, clay, and coal shall be without damage to the surface of said land except to provide air shafts and escape for mine water." The Fifth District noted it once decided "a much more difficult case" involving Tuscarawas County deeds executed in 1882 and 1884 "containing non-specific mineral reservation" where the court reviewed the date of the reservations and concluded they did not include oil and gas due to the Ohio Supreme Court's *Detlor* holding. *Muffley v. M.B. Operating Co., Inc.*, 5th Dist. No. CA-6910 (Oct. 27, 1986), citing *Belden v. Thomas*, 5th Dist. No. 1148 (Aug. 5, 1975). The *Muffley* court then concluded the 1960 grant did not include oil

and gas and stated the grantor should have referred to oil and gas since these substances were common in 1960.[3] *Id.*

{¶25} In *Jividen*, a 1910 deed said the purpose was to "convey the surface only" and to "reserve all coal and other mineral, with the right to mine and haul same through this and adjacent land" and "the right to sink air shaft on said land" and to "extend their switch up the hollow." *Jividen v. New Pittsburg Coal Co.*, 45 Ohio App. 294, 295, 187 N.E. 124 (4th Dist.1933). The plaintiff argued there was no oil and gas development in the immediate vicinity at the time the deed was signed, coal mining was occurring, and the easements were consistent with coal mining. *Id.* at 295, 297 (the court noted there was some small oil and gas development in the vicinity). The Fourth District mentioned: "The express rights to mine, haul through, sink air shaft, and extend a switch, contained in the conveyance, are reservations not inconsistent with the right to the use of the surface for the development of oil and gas." *Id.* at 296. In any event, the Fourth District concluded *Detlor* was inapplicable, focusing on the deed's "surface only" language to conclude oil and gas were reserved by the grantor. *Id.* at 296-297 (finding the reservation of coal was not even necessary due to the "surface only" language). *See also Minnich v. Guernsey Sav. & Loan Co.*, 36 Ohio App.3d 54, 57, 521 N.E.2d 489 (5th Dist.1987) (the 1883 deed did not only grant coal as it limited the retained property to the "surface of all said lands"). Appellee distinguishes such cases as they contain language regarding the surface.

{¶26} In *Wiseman*, an 1894 Lawrence County deed excepted and reserved "all the coal, iron-ore and other minerals" and "rights of ingress, egress, regress and of way, and other necessary or convenient rights and privileges, in, upon, under and over the same for the purpose of mining, removing, and taking away as well the coal,

---

[3] This particular statement appears contradictory. Applying *Detlor*'s instruction to consider the timing of the deed and the Court's use of the lack of knowledge of oil in the area as a reason for not including oil and gas in the reservation, one would think a 1960 deed would be construed as including oil and gas because these minerals had become pervasive by that time. The rationale in *Muffley* construes the time of execution against oil and gas when it was not known at the time (citing *Detlor* and *Belden*) but then also construes the time of execution against oil and gas when it was known at the time. Although the *Muffley* court did not expressly rely on it, we note the deed's additional language, "shall be without damage to the surface of said land except to provide air shafts and escape for mine water," which could be construed as limiting language.

iron-ore and on and underlying the said land as other coal, iron-ore and minerals." *Wiseman v. Cambria Products Co.*, 61 Ohio App.3d 294, 296, 572 N.E.2d 759 (4th Dist.1989). The Fourth District concluded the broad range of additional rights was not limiting as in *Detlor* and would be applicable to oil and gas production as well as coal. *Id.* at 299 (upholding summary judgment).

{¶27} In *Coldwell*, this court set forth the language of two Columbiana County deeds. One deed referred to "all the coal and other minerals" with "the right and privilege to mine all of said coal without reservation or liability for damages that may arise by reason of mining said coal or the operation of said mine or mines to the surface" and "the right and privilege to the use of the necessary surface over said coal for the purpose of erecting, constructing and maintaining the necessary air shafts and air courses to ventilate mines for the removal of said coal and other minerals." *Coldwell v. Moore*, 7th Dist. No. 13 CO 0027, 2014-Ohio-5323, 22 N.E.3d 1097, ¶ 35. Another deed referred to "all the coal and other minerals"; "the right to enter upon the surface of said premises with workmen to erect all necessary buildings * * * for the carrying on of the business of mining and shipping coal and other minerals"; and "the right to sink all necessary air shafts on said premises and of building all railroad tracts and car switches necessary for said mining business, and necessary roads to and from any mine or mines that may be opened and operated on said premises." *Id.* at ¶ 36.

{¶28} After reviewing *Detlor* and holdings from the Fourth and Fifth Districts, it was stated: "Nothing in the language of these deeds shows that the parties contemplated something less general than 'other minerals.' * * * Also, nothing in the deeds is inconsistent with the development of oil and gas." *Id.* at ¶ 43. This court observed: "The term "minerals" has long been held to include oil and gas." *Id.* Appellant focuses on this portion of the decision.

{¶29} Appellee, however, points out the *Coldwell* case then stated the *most important* factor was deed language stating the plaintiffs were granted *surface rights only. Id.*, citing *Jividen*, 45 Ohio App. 294. This is distinguishable from the case at bar. We also note the date of the deeds was not mentioned in the *Coldwell* case.

The age of the deed in this case, predating even the Supreme Court's *Detlor* by 42 years, makes this case distinguishable from cases reviewing deeds executed in the years after oil and/or gas was discovered in Ohio.

{¶30} In the case at bar, Appellant states the use of "all" in the clause "all the mineral & coal" is plain language requiring this court to include every possible mineral. However, this is not the law under *Detlor*. The deed in *Detlor* also used "all" which would have modified "other valuable minerals," i.e., the deed conveyed "all the coal of every variety, and all the iron ore, fire clay, and other valuable minerals." Appellant's emphasis on the word (or symbol for) "and" between mineral and coal is even less compelling. There was no argument only coal was reserved. As aforementioned, the argument was this phrase conveyed coal and other non-migratory minerals.

{¶31} The *Detlor* holding suggests the more recent the deed, the more likely it is oil and gas were intended to be included as minerals. The year the deed was signed in the case at bar is much earlier than the deeds in any of the cited cases. *Detlor* addressed an 1890 deed; this case involves an 1848 deed. The Supreme Court focused on the lack of evidence supporting the position that oil and gas were known in the area or anticipated in the transfer. As in *Detlor*, there is no indication oil and gas were being produced in the immediate vicinity in 1848. Nor is there any indication such substances were being produced in the general area or elsewhere. Appellant's response to summary judgment did not set forth evidence to distinguish the case from *Detlor,* and Appellant did not show gas or oil was produced in Belmont County or the general vicinity of this property in 1848.

{¶32} In construing the deed in terms of the date of execution and vicinity, the *Detlor* court also found it relevant that the easements granted in the deed were "peculiarly applicable to the mining of minerals in place" rather than to minerals of a migratory character, noting "nothing is said about derricks, pipe lines, tanks, the use of water for drilling, or the removal of machinery used in drilling or operating oil or gas wells." *Detlor*, 57 Ohio St. at 503. Here, nothing is said about items relevant to oil and gas. Still, the deed does not contain the particular easement language in *Detlor*,

where the deed referred to use of the surface "as may be necessary for pits, shafts, platforms, drains, railroads, switches, side tracks, etc., to facilitate the mining and removal of such coal, ore, or other minerals, and no more."

{¶33} Appellee states the reference to "mining" was part of the limiting language in *Detlor* which was used to conclude the deed did not refer to migratory minerals. The deed here has two references to the right to "mine," which Appellee construes as language limiting or restricting the word mineral. We note the holding: "Unless the language of the conveyance by which the minerals are acquired repels such construction, a severed mineral estate is considered to include those rights to use of the surface as are reasonably necessary for the proper working of the mine and the obtaining of the minerals." *Chesapeake Exploration, L.L.C. v. Buell*, 144 Ohio St.3d 490, 2015-Ohio-4551, 45 N.E.3d 185, ¶ 23, quoting *Quarto Mining Co. v. Litman*, 42 Ohio St.2d 73, 83, 326 N.E.2d 676 (1975). On the one hand, the word "mine" was used by the recent *Buell* case in connection with an oil and gas case. On the other hand, this would not affect the intent of the parties to the deed *at the time the deed was drafted*.

{¶34} Even if the word "mine" itself is not dispositive, the clauses containing the word support Appellee's position. This case involves a conveyance with language that "repels" a construction of the right to use the surface in any manner reasonably necessary for obtaining all minerals. Specifically, the first reference to mining is in the clause: "the right and privilege to mine the same from his land on the East side thereof * * *." This limits the right to mine from a separate parcel owned by the grantor. One may ask how one could mine for oil or gas from a separate parcel in the year 1848 (thus horizontal fracturing is not considered). The second reference to mining states the grantor and his heirs and assigns "are not to enter upon any part of the same to mine for said coal & mineral, but may enter & ___ under only from his own land * * *."

{¶35} Considering the principles in *Detlor*, the much earlier deed in this case, the lack of evidence that oil and gas production were contemplated at the time or place of conveyance, and the state's history of oil and gas production, this court

overrules this assignment of error and upholds the trial court's decision finding the 1848 deed did not reserve oil and gas interests.

CONCLUSION

**{¶36}** Due to recent Ohio Supreme Court rulings, the decision finding automatic abandonment under the 1989 DMA was erroneous and the first two assignments of error have merit. However, the trial court's alternative decision (finding the 1848 deed did not reserve an oil and gas interest) was proper. Appellant's third assignment of error is therefore overruled. In accordance, the trial court's entry of summary judgment is affirmed.

Donofrio, J., concurs.

DeGenaro, J., concurs.