{¶ 57} I respectfully dissent from the majority's holdings on assignments of error one, two and three.
 {¶ 58} TRUSTS
 {¶ 59} The construction of written contracts and instruments, including deeds, is a matter of law, which we review de novo.Long Beach Assn., Inc. v. Jones, 82 Ohio St.3d 574, 576, 1998-Ohio-186. This court presumes that a deed expresses the intentions of the grantor and grantee at the time of execution.Parker v. Parker (Sept. 28, 2000), 4th Dist. No. 99CA845, 2000 Ohio App. LEXIS 4697, at 8. If the language of the deed is clear and unambiguous, we cannot interpret the parties' intent to the contrary. Consol. Land Co. v. Capstone Holding Co., 7th Dist. No. 02-BA-22, 2002-Ohio-7378, at ¶ 14. When the language is clear, the rules of construction need not be applied. SeringettiConstr. Co. v. Cincinnati, (1988), 51 Ohio App.3d 1, 4. The instrument must be read in its entirety when divining the intent of the parties. Stocker Sitler, Inc. v. Metzger (1969),19 Ohio App.2d 135, 142.
 {¶ 60} The cardinal purpose of judicial examination of any written instrument is to ascertain and give effect to the intent of the parties to said instrument. Foster Wheeler Enviresponse,Inc. v. Franklin Cty. Convention Facilities Auth. (1997),78 Ohio St.3d 353, 361, citing Aultman Hosp. Assn. v. CommunityMut. Ins. Co. (1989), 46 Ohio St.3d 51, 53. "`The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.'" Id., quoting Kelly v.Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, at ¶ 1 of the syllabus. When examining a written instrument, a reviewing court should give the language of the instrument its plain and ordinary meaning unless some other meaning is evidenced within the document. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, at paragraph two of the syllabus. A contract is to be construed against the party who drafted it. Graham v. DrydockCoal Co. (1996), 76 Ohio St.3d 311, 314.
 {¶ 61} Only in the event that a term of a contract is determined to be ambiguous will the matter be labeled as a question of fact. Inland Refuse Transfer Co. v. Browning-FerrisIndustries of Ohio (1984), 15 Ohio St.3d 321, 322. A contract or its terms will only be viewed as ambiguous in the event that the rights and duties imposed upon the parties thereto are reasonably subject to conflicting interpretations. The fact that the contractual language "may, on occasion, pose difficult factual applications [does] not make the language ambiguous." HartfordIns. Co. of the Southeast v. Occidental Fire Cas. Co. of N.Carolina (C.A.7, 1990), 908 F.2d 235, 239. Similarly, the Ohio Supreme Court has held:
 {¶ 62} "It is not the responsibility or function of this court to rewrite the parties' contract in order to provide for a more equitable result. A contract does not become ambiguous by reason of the fact that in its operation it will work a hardship upon one of the parties thereto." Foster Wheeler Enviresponse,Inc., at 362, citing Ohio Crane Co. v. Hicks (1924),110 Ohio St. 168, 172.
 {¶ 63} In this matter it is clear from the deed, the stipulated facts, the trust document and the testimony of Saltzman that the Hill Farm properties were deeded to him personally and not included in the declaration of trust. Furthermore, they were placed in Saltzman's name for the sole purpose of disguising the true ownership of the property from those relying on Ohio's conveyance and recording statutes. Toledo Coke and Saltzman were engaged in a deliberate attempt to mislead, and to subvert Ohio public policy.
 {¶ 64} Mr. Brown himself in 1992 asked Bergholtz controller Thomas Burke to go through "the corporate records with the deeds and do what he needed to be done to insure that they were transferred or property recorded in Bergholtz name." Bergholtz realized that the use of nominees did not protect its interests. Burke, appellees' expert, stated its predecessor, Toledo Coke, "has no interest in the coal and never did" because legal title was never granted to it.
 {¶ 65} It is clear there was no "mistake" as to why the property was titled in Saltzman's name. Trial testimony states, "in the 1960's Toledo Coke's common practice when acquiring coal rights was to disguise the identity of the company to avoid landowners from running up prices for their property and mineral rights." Toledo Coke tried to create a more favorable market for itself through deception.
 {¶ 66} Though its practice of using nominees may not have been prohibited under Ohio law, it created a dilemma. How could Toledo Coke guarantee its interest in the land against a potential claim against Saltzman? Thus, the parties entered into a trust document, another contract, which was inexorably clear and unambiguous. The declaration of trust (complete with a list of the subject properties in exhibit A thereto) included a method by which each party could add or delete properties from the trust. But the properties, subject of this case, were not included by Toledo Coke in this unambiguous, legally binding contract.
 {¶ 67} Saltzman, upon discovering that the Hill Farm properties were titled to him believed that Thom George had transferred the property into his name in order to hide assets from George's ex wife. This was "something that George had done, before, although never with coal rights." It appears as if Toledo Coke, George, and Saltzman misled and deceived creditors, competitors and other landowners. But in this case, Saltzman did not realize he was a party to the transaction. To believe this was an accidental oversight by Toledo Coke, sophisticated mineral rights brokers, lawyers and Thom George is absurd. It was gross negligence or fraud or both. If this behavior concerned a credit card it would be a felony. The fact that Saltzman was never told indicates Toledo Coke did not want him to know and that he, along with Dianne Dunning, were deliberately misled for 30 years.
 {¶ 68} The majority holds than an express trust was created regarding the Hill Farm properties pursuant to the declaration of trust. The evidence shows that these properties were intentionally not included in the subject trust. As none of the original signatories to that instrument testified, we do not know why this occurred. It is not the province of this court to speculate. The declaration of trust required that Toledo Coke tender subsequent rights or interest in coal properties to Saltzman, who was required to execute and deliver a written supplement, incorporating the new res within the trust. This condition subsequent never occurred regarding the Hill Farm properties. Consequently any theory of express trust must fail. The entire body of contract law tells us we must assume that the contents of the trust and the trust agreement are complete unless supplemented pursuant to its written terms.
 {¶ 69} Of course, the law of Ohio provides that express oral trusts in real property may be established by parol evidence.Mathews v. Leaman (1874), 24 Ohio St. 615, 623-624; Russell v.Bruer (1901), 64 Ohio St. 1, at paragraph two of the syllabus The Supreme Court has also held that parol evidence may be used to engraft an express trust on an absolute deed. In order to accomplish this, however, the declaration of trust must be contemporaneous with the deed, and the parol evidence must be so clear and conclusive as to establish the trust's existence beyond a reasonable doubt. Russell, at paragraph two of the syllabus. There is no such evidence in this case.
 {¶ 70} Bergholtz asserts that the Hill Farm properties are covered by the "future acquisition" language of the express trust. This argument must fail, since the terms of the declaration of trust concerning such acquisitions were not fulfilled.
 {¶ 71} The only legal theory under which Toledo Coke's successor Bergholtz can prevail is under the equitable doctrine of implied trust, even though this was not pled in either the complaint or amended complaint.
 {¶ 72} Ohio recognizes several forms of implied trust, including constructive and resulting trusts. The trial court did not specify the type of trust allegedly established in this case. Under the facts in this case, the only type of trust which might be found is a "purchase money resulting trust." As with other types of resulting trusts, a purchase money trust involves a situation where the parties did not expressly create a trust, but where the courts imply a trust because this was the intention of the parties. Purchase money trusts are succinctly defined in the Restatement of the Law, Trusts 2d (1959) 393, at Section 440: "[w]here a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid * * *." "It has been said that constructive trusts, considered as a device for prevention of fraud and unjust enrichment, are easily distinguished from resulting trusts, which are designed to further the intention of the parties. 53 O. Jur.2d, Trusts, Section 88." Brown v. Holloway (July 15, 1981) 2d Dist. No. CA 6689, 1981 Ohio App. LEXIS 13615, at 22.
 {¶ 73} In this case, there is simply no evidence of a meeting of the minds between Toledo Coke, Thom George and Saltzman that Saltzman was to hold the title to the Hill Farm properties in trust for Toledo Coke, or anybody. There is no evidence of what intention existed on the part of George or Toledo Coke in titling these properties in Saltzman's name. For these reasons, no purchase money trust arose.
 {¶ 74} UNCLEAN HANDS AND PUBLIC POLICY
 {¶ 75} The doctrine of unclean hands states the following: "[h]e who seeks equity must come with clean hands. Equity is based upon what is perceived as fair under the circumstances of each case and, when both parties are guilty of injustice, a court of equity will leave them as they are." Patterson v. Blanton
(1996), 109 Ohio App.3d 349, 354.
The evidence in the record demonstrates that Bergholtz and its predecessor, Toledo Coke were guilty of misconduct and deceit in this case. The essential elements of an action for deceit include: "`actual or implied representations or concealment of a matter of fact which relates to the present or past, which is material to the transaction; made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true of false, that knowledge may be inferred; with the intent of misleading another into relying upon it; and reliance upon it by the other person with a right to so rely; with resulting injury as the consequence of such reliance.'"Brown at 26, quoting 24 O. Jur.2d, Fraud and Deceit, Section 20.
 {¶ 76} In this case, Toledo Coke did not follow its own trust document with Saltzman. It titled the Hill Farm property in his name in order to evade the recording and conveyance statutes. It used Saltzman's name and identity to hide its alleged ownership rights without his consent. Saltzman retained all liability for the properties, without even knowing he had title. Dianne Dunning was allowed to pay taxes on the property from 1988 forward, until it became profitable for Bergholtz to assert its claims. Bergholtz has violated the doctrine of unclean hands and should not be allowed a remedy in equity. Cf. Barth v. Barth, 8th Dist. No. 86473, 2006-Ohio-1094, at ¶ 36.
 {¶ 77} Assignment of error 3 — STATUTE OF LIMITATIONS
 {¶ 78} Regarding the majority's third assignment of error, I respectfully dissent regarding the applicable statute of limitations.
 {¶ 79} The substance of a claim, not the form of the complaint, determines the appropriate statute of limitations.Hunter v. Shenango Furnace Co. (1988), 38 Ohio St.3d 235, 237; see, also, Esposito v. Caputo, 11th Dist. No. 2002-L-099, 2003-Ohio-1590, at ¶ 17. "In other words, deciding which statute of limitations applies in any given case will depend upon the type of damages allegedly suffered by a plaintiff." Kay v.Cleveland, 8th Dist. No. 81099, 2003-Ohio-171, at ¶ 17. Bergholtz alleged two causes of action in its original complaint filed August 20, 2003: count one, for mistaken conveyance; and, count two, to quiet title, pursuant to R.C. 5303.01. The first is cognizable in equity; the second is an equitable remedy reduced to statute. Each cause of action is subject to its own statute of limitations.
 {¶ 80} The facts of transfer are not in dispute. Saltzman acquired title to the property in December 1969 by warranty deed. Saltzman, unaware of his alleged status as nominee, executed a warranty deed to Diane Dunning in April 1988. He executed a quit claim deed for the same property to Bergholtz in May 1993. Since Bergholtz took whatever rights it had by quit claim deed, not a warranty deed, it received title as is, assuming all clouds and defects.
 {¶ 81} The statute of limitation began to run in May, 1993. The first claim for relief was mistaken conveyance. If mistake is not found, no action to quiet title will lie, since the warranty deeds to Saltzman and Dunning cannot be set aside. The quit claim deed from Saltzman to Berghotlz was clearly clouded — and probably invalid — as Saltzman could not deed away property he no longer owned. The allegation that the prior conveyance via warranty deed to Dunning interferes with the subsequent quit claim from Saltzman is non-persuasive.
 {¶ 82} The quiet title action is governed statutorily by a twenty-one year limitations period. However, a ten year limitations period applies to the claim for mistaken conveyance, since it arises in equity. That period had expired. Without mistaken conveyance, there is nothing to support the quiet title action, since Bergholtz has no valid title in the Hill Farm properties. It merely has whatever Saltzman had at the time he executed the 1993 quit claim deed — nothing.
 {¶ 83} I respectfully dissent regarding assignments of error one, two, and three. I concur with the disposition of assignment of error four.