[Cite as *Miller v. Mellott*, 2019-Ohio-504.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MONROE COUNTY

ALLEN B. MILLER, ET AL.,

Plaintiffs-Appellants,

v.

ELBERT MELLOTT, ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 MO 0004**

---

Civil Appeal from the
Court of Common Pleas of Monroe County, Ohio
Case No. 2017-022

**BEFORE:**
Kathleen Bartlett, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
AFFIRMED

---

*Attys. Kristopher Justice and Daniel Corcoran*, 424 Second Street, Marietta, Ohio 45750, for Appellants and

*Attys. Scott Eickelberger*, David Tarbert and Ryan Linn, 50 North Fourth Street, P.O. Box 1030, Zanesville, Ohio 43702, for Appellees.

Dated: February 6, 2019

**Bartlett, J.**

{¶1}   Plaintiffs-Appellants, Allen B. Miller, Matilda J. Miller, Craig M. Miller, Tina E. Miller, Brenda D. Thomas, and Kevin M. Thomas (hereinafter collectively "Appellants"), appeal the February 21, 2018 decision of the Monroe County Court of Common Pleas granting summary judgment in favor of Defendants-Appellees, and denying Appellants' motion for summary judgment.   For the following reasons, Appellants' appeal does not have merit.  The judgment of the trial court is affirmed.

### Facts & Procedural History

{¶2}   Appellants are the undisputed surface owners of approximately 69.38 acres located in Adams Township, Monroe County, Ohio by virtue of the Warranty Deed dated September 30, 2010, and recorded on October 4, 2010 at Volume 195, Page 389 of the Monroe County Official Records.

{¶3}   Appellees are the owners of record of all of the oil and gas in and underlying the 69.38 acre parcel by virtue of the Warranty Deed dated and recorded May 8, 1947 at Volume 120, Page 223 of the Monroe County Deed Records from Elbert Mellott and Anna Mellott, husband and wife, to Charles W. Knowlton and Ella Murl Knowlton (the "Mellott Deed").  Pursuant to that Deed, Elbert Mellott and Anna Mellott conveyed the surface of the premises but reserved all of the oil and gas in and underlying the premises (the "Mellott Mineral Interest").  The reservation stated:

> Except coal as formerly sold by Isaac Ward, Dec'd.
>
> Also except all the oil and gas in and under said real estate.  The said grantors herein reserve the right to lease said premises for oil and gas purposes, and are to receive all bonuses and rentals deriving from the leasing of said premises for oil or gas purposes.  If a producing gas well is drilled on this real estate, grantees are to have gas for household purposes free of charge.  Also the grantees shall be paid all damages caused by the operation of any or all oil or gas wells.

(Complaint, Exhibit B).

Case No. 18 MO 0004

**{¶4}** Appellants state that Elbert Mellott died January 22, 1963 and Anna Mellott died November 23, 1982, and that no mention of the interest was in either estate and that no further transfers or recorded transactions occurred of the oil and gas interest. (Certified Copies of Records, Affidavit of Abandonment recorded on January 10, 2012, Volume 212, Page 630 of the Monroe County records, at ¶ 2).

**{¶5}** Appellants identify their "root of title" deed as the warranty deed from William M. Truex and Helen L. Truex, husband and wife, to Albert Hartline and Nadine Hartline, husband and wife, dated April 18, 1959, and recorded May 4, 1959 in the deed records of Monroe County, Ohio at Volume 137, Page 232. (Plaintiff's MSJ at 5).

**{¶6}** The purported root of title deed contains the following:

Except coal as formerly sold by Isaac Ward, Dec'd; and also except all the
oil and gas in and under said real estate.

Last deed reference:

**{¶7}** No other deeds were provided to the trial court for the time period between the Mellott Deed in 1947 and the purported root of title deed ("Truex Deed") in 1959.

**{¶8}** The subsequent deeds following the purported root of title, including a 1978 Deed between Albert Hartline and Nadine Hartline, a 1979 deed from Albert Hartline and Nadine Hartline to A. Aaron Miller and Charlene Miller, and the 2010 deed from A. Aaron Miller and Charlene Miller to M. Craig Miller, Allen B. Miller, and Brenda D. Thomas, all contain the following reference:

EXCEPT coal as formerly sold by Isaac Ward, deceased; and ALSO
EXCEPT all the oil and gas in and under said real estate as reserved by
the prior grantors.

(Plaintiff's MSJ at 11).

**{¶9}** On November 17, 2011, Appellants published a notice of abandonment, followed by an affidavit of abandonment (January 10, 2012). No certified mail was issued with regard to the notice of abandonment.

**{¶10}** On January 27, 2012, Appellants caused the Monroe County Recorder to memorialize on the record of the Mellott Deed that the Mellott Mineral Interest had been

abandoned.

{¶11} On February 3, 2017, Appellants filed a Complaint for Declaratory Judgment and to Quiet Title and Notice of Abandonment. Appellants included a Notice of Abandonment within their Complaint, following the signature line for the prayer for relief in the Complaint. It was not attached as an exhibit or a separate document. Appellants stated that they would file the Affidavit of Abandonment, and in the absence of any filings by the mineral interest holders, would seek the declaration of abandonment of the interest and vesting of the interest in Appellants.

{¶12} In addition to claims of abandonment pursuant to the Dormant Mineral Act (DMA) through the affidavit of abandonment filed in 2012, and the notice of abandonment filed within the Complaint in 2017, Appellants alleged a claim pursuant to the Marketable Title Act (MTA) alleging that the root of title deed from William M. Truex and Helen L. Truex to Albert Hartline and Nadine Hartline recorded on May 4, 1959 at Volume 137, Page 232 of the Deed Records of Monroe County, did not specifically refer to or identify the Mellott Mineral Interest, and since Appellees failed to record any preserving notices, that the Mellott Mineral Interest was extinguished.

{¶13} Appellants lastly alleged claims for adverse possession, and to quiet title.

{¶14} On March 27, 2017, during the pendency of the underlying action, Appellants recorded an Affidavit of Abandonment at Volume 355, Page 186 at Monroe County deed records, stating that the "notice of abandonment was attached to the complaint filed in the Monroe County Court of Common Pleas action styled *Allen B. Miller, et al. v. Elbert Mellott, aka Elbert H. Mellott, et al.,* Case No. 2017-022 ("Civil Action")." (Notice of Filing Certified Copies, 2017 Affidavit of Abandonment at ¶ 7). Appellants further stated that certain parties were served by certified mail,[1] return receipt requested, on February 7, 2017, February 9, 2017, February 13, 2017, and February 15, 2017. Those that were not served by certified mail were served by publication on February 23, 2017. (*Id.*). Appellants also stated "[a]fter due diligence, it is believed that some of the persons listed above are deceased and the last known address of those who have not already been served by certified mail, return receipt

---

[1] Those parties were served with the Appellants' Summons and Complaint for the underlying action, which included a notice of abandonment within the complaint.

requested, could not be ascertained at the time the notice was published, thereby making service by certified mail, return receipt requested, impossible to complete." *(Id.)*[2].

**{¶15}** On November 30, 2017, the parties filed competing Motions for Summary Judgment. Appellees also filed a Motion to Strike, requesting an order directing the Monroe County, Ohio Recorder to strike from the record the Affidavit of Abandonment and Notice of Failure to File recorded by Appellants.

**{¶16}** On December 15, 2017, the parties each filed memoranda opposing the other's motion for summary judgment.

**{¶17}** On December 28, 2017, the parties filed reply memoranda in further support of their motions for summary judgment.

**{¶18}** On February 21, 2018, following non-oral hearing on cross summary judgment motions, the trial court issued a Judgment Entry finding: that the claims under the 2006 DMA were void for the failure to attempt service by certified mail; that the DMA controlled with regard to severed, fee mineral interests rather than the MTA; that the complaint was not equivalent to a "Notice of Intent to Declare Abandon" and was not the procedure required in R.C. 5301.56; and that the claims for adverse possession and quiet title failed, granting summary judgment in favor of Defendants-Appellees, dismissing Plaintiffs-Appellants' Complaint and striking and voiding the Affidavits of Abandonment previously filed by Plaintiffs-Appellants with the Monroe County Recorder. (2/21/18 JE).

**{¶19}** Appellants subsequently filed the instant timely appeal.

### Standard of Review

**{¶20}** An appellate court reviews the trial court's entry of summary judgment on a *de novo* basis, following the same standard as employed by the trial court. Civ. R. 56(C). A trial court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party.

---

[2] Appellants' Affidavit of Abandonment recorded January 10, 2012 is silent as to any due diligence to ascertain addresses, and merely states that "[o]n November 17, 2011, notice of the affiants' intent to declare abandonment of oil and gas mineral interest was published in the Monroe County Beacon." (Notice of Filing Certified Copies, 2012 Affidavit of Abandonment at ¶ 5).

Civ. R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ. R. 56(C). *Dresher v. Burt,* 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). The key to a summary judgment is that there must be no genuine issue as to any material fact. A "material fact" depends on the substantive law of the claim being litigated. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

{¶21} Appellants raise a single assignment of error:

THE TRIAL COURT ERRED IN GRANTING DEFENDANTS-APPELLEES' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS-APPELLANTS' MOTION FOR SUMMARY JUDGMENT.

### Appellants' Claim Pursuant to the Marketable Title Act

{¶22} The trial court held that Appellants' claim asserting that the mineral interest was automatically extinguished by the MTA was "an attempt to circumvent this specific statute [DMA] dealing with severed mineral interests." (2/21/18 JE at 6). The trial court employed an analysis of the general versus specific statutory provisions, and found that "[t]he DMA, not the MTA, is the remedy available to a surface owner attempting to quiet title to a severed mineral interest." (*Id.* at 5).

{¶23} The legislature enacted the MTA to "simplify[] and facilitat[e] land title transactions by allowing persons to rely on a record chain of title." R.C.5301.55. The act allows that a party "who has an unbroken chain of title of record to any interest in land for forty years or more, has a marketable record title to such interest." R.C. 5301.48.

{¶24} The MTA "operates to extinguish such interests and claims, existing prior to the effective date of the root of title." R.C. 5301.47(A). The "root of title" is "that conveyance or other title transaction in the chain of title of a person * * * which was the most recent to be recorded as of a date forty years prior to the time when marketability is being determined." R.C. 5301.47(E). Pursuant to the MTA, "record marketable title shall be held by its owner and shall be taken by any person dealing with the land free and clear of all interests, claims, or charges whatsoever, the existence of which

depends upon any act, transaction, event, or omission that occurred prior to the effective date of the root of title." *Blackstone v. Moore*, 2017-Ohio-5704, 94 N.E.3d 108, ¶ 30 (7th Dist.), citing R.C. 5301.50, affirmed by *Blackstone v. Moore*, -- Ohio St.3d --, 2018-Ohio4959, --N.E.3d --, citing R.C. 5301.48. "A person who has an unbroken chain of title of record to any interest in land for forty years or more has a marketable record title to such interest." *Id.*, citing *Warner v. Palmer*, 7th Dist. No. 14 BE 0038, 2017-Ohio-1080, ¶ 30.

{¶25} Pursuant to the Ohio Supreme Court's recent holding in *Blackstone*, a royalty interest is subject to both the MTA and DMA. See *Blackstone*, supra. Thus, the trial court's refusal to apply the MTA, here, was error.

{¶26} The root of title in the instant case contains the following:

Except coal as formerly sold by Isaac Ward, Dec'd; and also except all the oil and gas in and under said real estate.

Last deed reference:

(Certified Deed Copies at pg. 5). There is no deed cited as the "last deed reference."

{¶27} This Court has previously held that a purported root of title that contained an exception for oil and gas is not a clear root of title "because it does not contain a fee simple title free of any such oil and gas exception and reservation." *Holdren v. Mann,* 7th Dist. No. 592, 1985 WL 10385, *2 (Feb. 13, 1985). See also *Christman v. Wells,* 7th Dist. No. 539, 1981 WL 4773. *1 (Aug. 28, 1981) (noting the deed reciting a reservation of royalties was not "the interest" claimed by appellant). In *Holdren,* the clause at issue stated "* * * and also reserving all oil and gas with the right to operate therefore* * *" and was repeated in the purported root of title. *Id.* at *1, *2. In *Christman,* the relevant clause that severed the oil and gas, and was subsequently repeated in multiple deeds in the chain of title (including the purported root of title deed), stated: "Excepting and reserving the one-half oil and gas royalty being 1/16th of the oil produced and 1/2 of the money received from the sale of gas." *Id.* In reviewing the severance clauses in *Christman* and *Holdren,* those Courts focused on the mere existence of the clause

within the purported root of title deeds to prevent extinguishment pursuant to the MTA and did not examine whether the clauses were general or specific within the root of title deed. See generally *Toth v. Berks Title Ins. Co.,* 6 Ohio St.3d 338, 340-341, 453 N.E.2d 639, 6 O.B.R. 394 (1983) (finding the root of title deed contained no mention of the setback use restrictions at issue in that case, but since there was a specific reference in a 1966 deed to the setback use restrictions, which deed was a part of the plaintiff's record marketable title, it was an "interest or defect which is inherent in the muniments" and not extinguished by the MTA); *Pollock v. Mooney,* 7th Dist. No. 13 MO 9, 2014-Ohio-4435, ¶ 6, 23-29 (finding the root of title deed contained no reference to the Sale of Royalty at issue and no deeds subsequent to the root of title repeated or referred to any prior oil or gas conveyance, such that extinguishment under the MTA was proper); *Murray Energy Corp, et al. v. Pepper Pike, et al.,* 11th Dist. No. 90420, 2008-Ohio-2818, ¶ 25, 28 (finding the root of title did not contain the restriction on the sale or use of alcohol on the property, and there was no specific reference to the restriction for forty years following the root of title, such that the restriction was extinguished by the MTA).

**{¶28}** In this case, the Appellants' purported root of title contains an exception for oil and gas, and as such, it is not a proper root of title "because it does not contain a fee simple title, free of any such oil and gas exception and reservation" *Holdren v. Mann,* 7th Dist. No. 592, 1985 WL 10385, *2 (Feb. 13, 1985);  See also *Christman v. Wells,* 7th Dist. No. 539, 1981 WL 4773. *1 (Aug. 28, 1981).  Although the trial court erred in refusing to apply the MTA, this error does not require reversal.  "Where the trial court enters a legally correct judgment but articulates an incorrect rationale for doing so, a court of appeals nonetheless affirms as a matter of law, because there has been no prejudice to the appealing party."  *State v. Roberts*, 7th Dist. Nos. 14 CO 0004, 14 CO 0005, 14 CO 0006, 2016-Ohio-4806, ¶ 23, citing App.R. 12(B).

### Appellants' Claims Pursuant to the Dormant Mineral Act

**{¶29}** Appellants asserted two separate claims before the trial court under the DMA:  first in 2012, and then in 2017.  The trial court held with respect to the 2012 attempted DMA claim, "there is no factual dispute.  Plaintiffs did not serve notice by certified mail, but rather went straight to attempting service by publication."  (2/21/18 JE

at 3). The trial court held that the Appellants' claims under the 2006 DMA were void for the failure to attempt service by certified mail prior to publishing their Notice of Intent to Declare Abandoned. (*Id.*).

**{¶30}** Pursuant to R.C. 5301.56(E)(1), a surface owner attempting to reunite the surface with the mineral interest must:

> Serve notice by certified mail, return receipt requested, to each holder or each holder's successors or assignees, at the last known address of each, of the owner's intent to declare the mineral interest abandoned. If service of notice cannot be completed to any holder, the owner shall publish notice of the owner's intent to declare the mineral interest abandoned at least once in a newspaper of general circulation in each county in which the land that is subject to the interest is located. The notice shall contain all of the information specified in division (F) of this section.

**{¶31}** We have recently reviewed the circumstances which would allow a party to file notice by publication, rather than by certified mail. See *Shilts v. Beardmore*, 7th Dist. 16 MO 0003, 2018-Ohio-863, appeal not allowed by *Shilts v. Beardmore*, 153 Ohio St.3d 1433, 2018-Ohio-2639, 101 N.E.3d 464; *Sharp v. Miller*, 2018-Ohio-4740, -- N.E3d – (7th Dist.). In *Shilts*, we acknowledged that R.C. 5301.56(E)(1) allows for notice by publication when notice cannot be completed through the requisite certified mail. *Id.* At ¶ 15. In *Shilts*, we found that the following efforts to locate potential heirs satisfied the "reasonable due diligence" standard and thus permitted notice by publication: probate records, public records, Ohio Department of Natural Resources ("ODNR") records, and an internet search. *Id.* at ¶ 14. The parties presented evidence of these efforts in the form of an affidavit signed by the appellee's counsel who undertook the search efforts. *Id.* Similarly, in *Sharp*, we found that a search for public records, specifically probate and deed records, satisfied the reasonable due diligence standard. *Id.* at ¶ 22. In that case, an affidavit from counsel averring to the search efforts was included as summary judgment evidence. While we declined to establish a bright-line rule as to what specific efforts must be undertaken in each case, it is clear from these cases that some evidence, typically in the form of an affidavit, must be

presented to establish the efforts undertaken by the party attempting to locate potential heirs.

{¶32} Appellants did not provide any evidence of efforts undertaken to identify names and addresses for service by certified mail. Even the Affidavit of Abandonment is completely silent as to whether any diligence was taken to ascertain names and address to complete service by certified mail as required by statute.[3] If Appellants disputed the allegations that no actions were taken to ascertain names and addresses to serve the Affidavit of Abandonment via certified mail, then Appellants could have refuted such claims in their response to Appellees' motion for summary judgment. Appellants also could have submitted evidence of the efforts undertaken to identify names and addresses for service before defaulting to service by publication in support of their own motion for summary judgment. There does not appear to be any such evidence provided to the trial court. As a result the trial court determined that no efforts were undertaken and the service was provided by publication without any attempt to complete by certified mail. In the absence of such evidence, Appellants failed to comply with the notice requirements of R.C. 5301.56 (E), and the trial court correctly held that the Appellants' 2012 DMA claim failed.

{¶33} As to the 2017 attempted DMA claim, the trial court held that Appellants' Complaint was not equivalent to a "Notice of Intent to Declare Abandon." (JE at 6). Appellants claim that including the Notice of Abandonment within the underlying Complaint should satisfy the notice requirements of R.C. 5301.56(E). Appellants state that there was a "separate" notice of abandonment "attached" to the Complaint. This is not an accurate description. The notice of abandonment began on the last page of the Complaint under counsel's signature; it was not truly a separate document as Appellants allege. Moreover, it was followed by the exhibits attached to the complaint, essentially stuck in the middle of the document that was served on the parties. The manner in which Appellants included the notice within the complaint certainly creates confusion upon service where the expectation of the party served with the complaint is

---

[3] Appellants must have recognized the flawed absence of such information in the 2012 recordings, since the 2017 Affidavit of Abandonment identifies the parties served by certified mail, and those that were served by publication, stating that it was believed "after due diligence" that some of the individuals are deceased and the last known addresses could not be ascertained, making service by certified mail to those listed individuals impossible to complete.

Case No. 18 MO 0004

advised in the summons that a complaint has been filed against him/her, and they are required to serve an answer to the complaint no later than 28 days after service of the summons. The inclusion of the notice of abandonment among the complaint and exhibits does not satisfy the notice requirements of R.C. 5301.56 and the trial court correctly determined that the Appellants' 2017 attempt to declare the interest abandoned under the DMA was without merit, warranting judgment in favor of Appellees.

{¶34} Appellants alternatively argue that the mineral interest has been deemed abandoned pursuant to the 2006 version of the DMA based on a conclusive presumption of abandonment, classifying multiple decisions as erroneous and stating that they should be overruled. *Bayes v. Sylvester*, 7th Dist. 13 MO 0020, 2017-Ohio-4033, *McCauley v. Brooker,* 7th Dist. No. 17 NO 0445, 2017-Ohio-9222, *Wendt v. Dickerson, 5*th Dist. No. 2017 AP 08 0024, 2018-Ohio-1034, *Darrah v. Baumberger,* 7th Dist. No. 15 MO 0002, 2017-Ohio-8025. As the Ohio Supreme Court instructed in *Corban:*

> Dormant mineral interests did not automatically pass by operation of law to the surface owner pursuant to the 1989 law. Thus, as of June 30, 2006, any surface holder seeking to claim dormant mineral rights and merge them with the surface estate is required to follow the statutory notice and recording procedures enacted in 2006 by H.B. 288. These procedures govern the manner by which mineral rights are deemed abandoned and vested in the surface holder and apply equally to claims that the mineral interests were abandoned prior to June 30, 2006.

*Corban, supra* at ¶ 31. Appellants failed to satisfy the statutory notice procedures required by the DMA. The 2006 DMA does not provide for a separate finding of abandonment based upon a conclusive presumption. The Court finds no merit in this argument.

{¶35} The trial court also held that the Appellants' claim for adverse possession likewise failed because the issue of a severed mineral interest is "exactly what the purpose of Ohio's DMA is intended to govern." (JE at 6). The trial court determined

Case No. 18 MO 0004

that a claim for adverse possession was not available since any such claim pertaining to severed mineral interests should be governed by the DMA. The trial court's supposition is in error. Minerals which have been severed from the title to the surface may be acquired by adverse possession, but this can take place only when the possession is actual, continuous, open, notorious and hostile. It cannot be accomplished by secret trespass upon the owner's rights. It has been held in many cases that where there has been a severance of the minerals from the surface, neither the owner of the surface nor the owner of the minerals can claim the other's estate merely by force of the possession of his own estate. Neither does the owner of the minerals lose his right by mere nonuse. His title can only be defeated by acts which actually take the minerals out of his possession. *Gill v. Fletcher*, 74 Ohio St. 295, 78 N.E. 433, 113 Am.St.Rep. 962 (1906); *Yoss v. Markley*, 68 N.E.2d 399 (CP) (1946); *Harper v. Jones*, 35 O.O. 524, 74 N.E.2d 397 (CP) (1947).

**{¶36}** Adverse possession focuses on the acts of the one claiming prescriptive ownership and requires proof of exclusive possession and open, notorious, continuous, and adverse use for a period of 21 years. *Grace v. Koch* (1998), 81 Ohio Sr.3d 577, 692 N.E.2d 1009, syllabus. To prevail on a claim for adverse possession, a claimant must establish these factors by clear and convincing evidence. *Grace v. Koch* at 580, Id. A party who fails to prove any of the elements fails to acquire title through adverse possession. *Grace v. Koch* at 579, Id.

**{¶37}** To satisfy the Ohio requirement for actual possession, a claimant must conduct activities indicative of ownership. *Vanasdal v. Brinker*, 500 N.E.2d 876 (Ohio Ct. App. 1985). Although there is no bright line rule, courts divide possession into productive uses (worthy of adverse possession) and mere maintenance (insufficient to satisfy an adverse possession claim). See, e.g. *Hardet v. Neumann*, 4th Dist. No. 13CA-977, 2014-Ohio-1770 at ¶ 14. This productive use requirement has prevailed in the context of actual possession of severed mineral interests as well. Because underlying minerals are not subject to maintenance, Ohio has held that a productive use is any which takes the mineral out of the record owner's possession. In essence, actual possession requires actual development of the oil and gas mineral rights. *Gill v. Fletcher*, 74 Ohio St. 295, 78 N.E. 433 (1906).

{¶38} It is undisputed that the Appellants are the surface owner of the property in question and Appellees are the owners of record of all of the oil and gas in and underlying the 69.38 acre parcel. However, in the present case, no party may be said to be in actual possession of the severed mineral property, since no party has begun to extract the minerals. "[W]here two persons claim under color of title, but neither is in actual possession, the superior title will prevail". *Logan Gas Co. v. Keith*, 117 Ohio St. 206, 214, 158 N.E. 184 (1927). Appellants have failed to plead and prove actual possession in an action to quiet title to the severed mineral interests. As there was no action taken as to removal of any of the minerals, there cannot be a claim for adverse possession. This Court finds that the Appellants have not demonstrated actual, continuous, open, notorious and hostile possession of the minerals as would cause the Appellees to lose their title to the mineral interests. This assignment of error is without merit.

{¶39} In summary, the 2012 DMA claim fails for failure to comply with the notice provisions, where it was not demonstrated that certified mail was attempted before proceeding to publication. The 2017 DMA claim fails since it was merely included within the summons and complaint, which does not comply with the notice provisions of R.C. 5301.56. The claim under the MTA was not considered by the trial court, however, this Court holds that the purported root of title is improper where it repeats the reservation language and the mere existence of the reservation clause within the purported root of title deed prevents extinguishment of the mineral interest pursuant to the Marketable Title Act. The Appellants' claims, based upon the Marketable Title Act and the Dormant Mineral Act, do not have merit. Lastly, the Appellants claim for adverse possession is without merit since the Appellants cannot prove that they had actual possession of the severed mineral interests. Accordingly, the judgment of the trial court is affirmed.

**Waite, P. J., concurs.**

**Robb, J., concurs.**

Case No. 18 MO 0004

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Monroe County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.


## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**