[Cite as *Tomechko v. Garrett*, 2021-Ohio-1377.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

GERALD J. TOMECHKO, TRUSTEE OF THE

GERALD J. TOMECHKO TRUST ET AL.,

Plaintiffs-Appellants,

v.

THOMAS GARRETT ET AL.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 NO 0473**

---

Civil Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. 216-0065

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed in Part, Reversed in Part and Modified

---

*Atty. Timothy Pettorini,* Roetzel & Andress LPA, 222 South Main Street, Suite 400, Akron, Ohio 44308 and *Atty. Sara Fanning*, Roetzel & Andress, LPA, Huntington Center, 41 South High Street, 21st Floor, Columbus, Ohio 43215, for Plaintiffs-Appellants, and

*Atty. C. Plummer* and *Atty. Haley Brown,* Tribbie, Plummer, Church & Laplante, LLC., 139 West Eighth Street, Cambridge, Ohio 43725, for Defendants-Appellees.

Dated:
April 2, 2021

Donofrio, J.

{¶1}   Plaintiffs-appellants, Gerald J. Tomechko, Trustee of the Gerald J. Tomechko Trust, and Denise M. Tomechko, Trustee of the Denise M. Tomechko Trust, appeal from a Noble County Common Pleas Court judgment granting partial summary judgment against them and in favor of defendants-appellees, Ruth Garrett, Dorothy Johnson, William D. Garrett, Linda L. Garrett, Barbara A. Stover, Jack A. Stover, Robert A. Garrett, Thomas L. Winland, Martha Jane Winland, Sharon Kay Gustina fka Sharon Kay Miller, Rodona A. Dunfee, Charles William Dunfee, Patti L. Leasure, William Davis Louthen, Jr., Constance S. Louthen, William H. Leininger, Cynthia K. Leininger, Charles Winland, and Regina Winland.

{¶2}   The parties agree to the following facts.  Around 1957, Herbert Garrett and John Garrett each owned an undivided one-half interest in the surface, mineral, and oil and gas estates in a 60.24 acre tract of land in Beaver Township, Noble County, Ohio.

{¶3}   Herbert Garrett died in 1965 and through his will, he left his one-half interest to his wife, Mary Geneva Garrett, "for and during her natural life as long as she remains my widow, and upon her death or remarriage, I give, devise, and bequeath said real and personal property to my children, to be equally divided among them, absolutely and in fee simple."  (Last Will and Testament of Herbert Garrett, Ex. A2 to Appellant's Motion for Partial Summary Judgment).  Mary was also empowered to sell the interest in the property for her support if necessary.

{¶4}   On February 9, 1977, Mary conveyed her one-half interest in the property to Coralee Garrett, the wife of John Garrett, through a Deed of Fiduciary, with the following reservation for Mary: "RESERVING from the above-described one-half interest all the mineral rights in and under" the property and other lands.

{¶5}   On June 16, 1979, John and Coralee Garrett conveyed their property interest to Lance Cramer, aka David Lance Cramer, "EXCEPTING a one-half interest in

Case No. 20 NO 0473

all mineral rights as reserved by Mary G. Garrett, Executrix of the estate of Herbert Wesley Garrett." Lance Cramer conveyed the property to James and Margaret Anderson with the same reservation by Mary. On March 5, 1982, John and Coralee Garrett conveyed to themselves the property for their joint lives, remainder to their survivors.

**{¶6}** Mary Garrett died on September 16, 1984.

**{¶7}** On March 8, 1989, the Andersons leased the oil and gas in the property to Trans Atlantic Energy Corp. On the same date, they and John and Coralee Garrett ratified the Anderson lease in a Ratification and Rental Division Order. This Order provided that delay rentals be paid 50% to the Andersons and 50% to John and Coralee Garrett.

**{¶8}** In 1991, two oil and gas wells were drilled on the property and started producing oil and gas. They continued to produce oil and gas.

**{¶9}** On August 27, 1998, the Andersons conveyed the property to themselves as Trustees of the Anderson Revocable Living Trust. On July 12, 2004, Coralee Garrett, now a widow, conveyed all of her interest in the property to the Anderson Revocable Living Trust via a quit-claim deed. In the quit-claim deed, it specifically stated that Coralee Garrett released and quitclaimed to the Andersons "all the right, title, interest and claim which the said Grantor has in and to the mineral rights, including any oil and gas" in the property.

**{¶10}** On September 9, 2010, Margaret Anderson, as Successor Trustee of the Anderson Family Living Trust, conveyed the property to Gerald J. and Denise M. Tomechko. On July 15, 2013, the Tomechkos conveyed the property to themselves as Gerald J. Tomechko, Trustee of the Gerald J. Tomechko Trust (1/2) and Denise M. Tomechko, Trustee of the Denise M. Tomechko Trust (1/2).

**{¶11}** In 2013 and 2014, appellees, the various devisees and heirs of Herbert and Mary Garrett, signed oil and gas leases to lease oil and gas under the property to Gulfport Energy Corporation. The Memoranda of Lease are recorded.

**{¶12}** On May 1, 2014, Northwood Energy Corporation, a lessee under the Anderson lease, notified appellants that it was reducing their royalty to 50% due to the property reservation of minerals in the 1977 Deed of Fiduciary with Mary Garrett's reservation which was attached to her conveyance to Coralee Garrett.

{¶13} The parties also agree to the following procedural history. On June 30, 2016, appellants filed a complaint which contained claims relating to the 1989 Ohio Dormant Mineral Act and a claim for estoppel. Appellant Br. at 3. The trial court stayed the case until the Ohio Supreme Court issued a decision in *Corban v. Chesapeake Exploration, LLC*, 149 Ohio St.3d 512, 2016-Ohio-5796, 76 N.E.3d 1089, a case concerning whether the 2006 version or the 1989 version of the Ohio Dormant Mineral Act applied to claims asserted after 2006 alleging that rights to oil, gas, and other minerals automatically vested in the surface land holder prior to 2006 due to abandonment. *Id.*

{¶14} The case was reinstated to the docket in October of 2016 and on December 6, 2016, appellants filed a first amended complaint adding the following claims which are the subject of the instant appeal: Count III, in which appellants sought a declaration that they acquired interest in the oil and gas rights which appellees argue were reserved in the Deed of Fiduciary; Count V, in which appellants sought a declaration that the Deed of Fiduciary did not reserve any interest in the oil and gas rights; Count VIII, in which appellants sought a declaration that the appellees' Gulfport leases were null and void and the Anderson lease covers all of the gas and oil rights in the property; and Count IX, in which appellants sought an order quieting title in appellants against any claim emanating from the Gulfport leases.

{¶15} On July 11, 2017, appellants propounded discovery requests on appellees, including requests for admissions. One of the requests asked appellees to "[a]dmit that the Deed of Fiduciary was intended to reserve the minerals underlying the property, but not the oil or gas." Appellees' responses were due on August 8, 2017 and they did not timely respond or request an extension of time to respond. On December 21, 2017, appellants sent appellees a letter informing them that their failure to timely respond to the requests for admissions deemed the requests admitted under Civ. R. 36 and they requested that they respond to appellants' other discovery requests. On January 5, 2018, appellees responded to all of appellants' discovery requests, including the requests for admissions. The docket shows that the notice of service of discovery responses was filed on January 8, 2018.

{¶16} On July 9, 2019, appellants filed a motion for partial summary judgment on the above Counts of the first amended complaint, plus Count III, the adverse

possession claim. Appellants asserted that Mary Garrett did not reserve an interest in oil and gas from the property in the Deed of Fiduciary because she did not specifically include the words "oil and gas" in the reservation and reserved only "minerals." They also argued that Mary Garrett and the Garrett Heirs failed to assert any interest in the oil and gas prior to 2013 when they signed with Gulfport.

**{¶17}** Appellants further relied upon appellees' failure to respond to their requests for admissions, which included the request that they "[a]dmit the Deed of Fiduciary was intended to reserve the minerals underlying the Property, but not the oil or gas." Appellants alternatively asserted that they were entitled to summary judgment because they had acquired the interests by adverse possession.

**{¶18}** On February 3, 2020, the trial court issued a judgment entry after a hearing. The court reviewed the history of transfer of the interests in the property, including the reservation of rights in the Deed of Fiduciary. Relying on our opinion in *Sheba v. Kautz*, 7th Dist. Belmont No. 15 BE 0008, 2017-Ohio-7699, the trial court found that the Deed of Fiduciary was signed during a time when there was oil and gas activity in the Noble County area. The court found that the best evidence of the reservation was in the Deed itself and the reservation of "minerals" in the Deed of Fiduciary included a reservation of oil and gas under the property. The court thus denied appellants' motion for partial summary judgment on this issue.

**{¶19}** As to adverse possession, the trial court relied upon our holding in *Miller v. Mellott*, 7th Dist. Monroe No. 18 MO 0004, 2019-Ohio-504. The trial court found that appellants failed to meet the exclusivity requirement of adverse possession because they presented no evidence that they had affected deep rights prior to appellees' execution of the lease with Gulfport. The court held that the Gulfport leases "act as proof that the 'Garrett Heirs' have exclusive use of the deep rights." However, the trial court did grant appellants' adverse possession claim relating to formations from the surface to 2,414 feet below the surface of the property (the "Shallow Rights") and found they were the owners of oil and gas in the Shallow Rights.

**{¶20}** As to the Gulfport leases, the trial court held that they were valid leases only as to horizons below the Shallow Rights and the Anderson Lease encumbered 100%

of the oil and gas in the Shallow Rights. The court further found that Counts I, II, IV, and VI of appellants' first amended complaint were rendered moot as a result of its holdings.

{¶21} Appellants raise three issues in their sole assignment of error. The assignment of error states:

> THE TRIAL COURT ERRED AS A MATTER OF LAW BY GRANTING PARTIAL SUMMARY JUDGMENT TO DEFENDANTS-APPELLEES.

{¶22} Appellants first assert that the trial court erred by ignoring appellees' failure to timely respond to their requests for admissions, including the one requesting that they "[a]dmit the Deed of Fiduciary was intended to reserve the minerals underlying the Property, but not the oil or gas." They complain that the failure to timely respond deemed the request admitted and was conclusive evidence that the Deed of Fiduciary did not reserve oil and gas interests. Appellants rely on Civ.R.36 and our holding in *Beacon Sales Acquisition, Inc. dba North Coast Commercial Roofing Systems v. M&C Siding and Roofing, LLC. Dba M&C Construction*, 7th Dist. Mahoning No. 19 MA 54, 2020-Ohio-1191, in support.

{¶23} Appellees acknowledge that they did not timely respond, but they assert that they did ultimately respond and denied the requests for admissions. They argue that no prejudice occurred from their delay in responding because they responded well before the motion for summary judgment was filed and the hearing on the motion was held. They also point out that they disputed this issue in their answer, which put appellants on notice of their denial and dispute of appellants' interpretation of the reservation language.

{¶24} Civ.R.36(A)(1) provides in relevant part that:

> The matter is admitted unless, within a period designated in the request, not less than twenty-eight days after service of the request or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney.

Case No. 20 NO 0473

Civ.R.36(A)(1). Civ.R.36(B) provides in relevant part:

> B) Effect of Admission. Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Civ. R. 16 governing modification of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice the party in maintaining his action or defense on the merits.

Civ.R.36(B).

{¶25} In *Beacon Sales*, we upheld the trial court's grant of summary judgment for Beacon Sales after it relied upon the deemed admissions of M&C Siding's due to M&C Sidings' failure to timely respond to its requests for admissions. 7th Dist. Mahoning No. 19 MA 54, 2020-Ohio-1191. We reviewed Civ.R.36 and found that M&C Siding had an opportunity to ask the court to withdraw the admissions per Civ.R. 36(B) and failed to do so, filed their responses after Beacon Sales filed its motion for summary judgment, and failed to rebut Beacon Sales' motion for summary judgment with any evidence demonstrating a genuine issue of material fact. *Id*. We concluded that:

> Because appellants failed to timely respond to appellee's request for admissions, the requests for admissions were deemed admitted by the Civil Rules. Those admissions were then proper summary judgment evidence. And because appellants failed to offer any proper summary judgment evidence that would create a genuine issue of material fact, the trial court appropriately granted summary judgment in appellee's favor.

*Beacon Sales*, at ¶ 30. In *CitiMortgage, Inc. v. Beam*, 7th Dist. Mahoning, No. 13 MA 62, 2014-Ohio-3809, at ¶ 5, we found that the trial court did not abuse its discretion by denying Beams' motion to allow them to respond to CitiMortgage's requests for admissions which was filed four months after the requests were served, three months after the requests were deemed admitted, and two months after CitiMortgage filed its

motion for summary judgment. We held that while Ohio courts prefer to decide cases on their merits and "not through the artificial operation of procedural rules," the Beams did not offer any evidence to support a conclusion that withdrawing their admissions was necessary in order to resolve the case. *Beam* at ¶ 11 (citations omitted).

**{¶26}** We find the instant case distinguishable from *Beacon Sales* and *Beam*. Here, the trial court did not address the issue of deemed admissions in its decision and proceeded to decide the motion for partial summary judgment on the merits based on briefs from both parties, exhibits, and oral argument. In *Beacon Sales* and *Beam*, the trial courts addressed the issue of deemed admissions directly. In addition, appellees in the instant case responded to the requests for admissions well before appellants filed the motion for partial summary judgment and one year and eight months before a hearing was held on that motion. In *Beacon* and *Beam,* the parties had not requested or moved to withdraw the admissions until well after the motions for summary judgment were filed and pending. Further, and unlike *Beacon Sales* and *Beam*, appellants in this case presented evidence under Civ. R. 56(C) to raise a genuine issue to be resolved by the trial court.

**{¶27}** Accordingly, this assertion lacks merit and is overruled.

**{¶28}** Appellants also assert that the trial court erred by denying their motion for partial summary judgment because the reservation language in the Deed of Fiduciary did not reserve any interest in the oil and gas in the one-half of the property.

**{¶29}** An appellate court reviews a trial court's summary judgment ruling de novo. *Comer v. Risko,*106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we apply the same test as the trial court in determining whether summary judgment was proper. A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist. Summit No. 27799, 2015-Ohio-4167, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). A "material fact" depends on the substantive law of the claim being litigated.

*Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶30}** If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

**{¶31}** Appellants cite to our holding in *Sheba v. Kautz*, 7th Dist. Belmont No. 15 BE 0008, 2017-Ohio-7699 and two cases from the Ohio Fifth District Court of Appeals, *Gordon v. Carter Oil Co.,* 19 Ohio App. 319 (5th Dist. 1924) and *Muffley v. M.B. Operating Co., Inc.,* 5th Dist. Stark No. CA-6910, 1986 WL 12348 for support. They contend that these cases establish that a reservation of "minerals" in a conveyance of property does not necessarily include a reservation to the property's oil and gas interests. Appellants conclude that Mary Geneva Garrett's reservation did not include the oil and gas interests because she did not specifically state "oil and gas" in the reservation, but merely stated a reservation to only the "mineral rights" in and under the property. They further assert that both parties operated as if the reservation did not include oil and gas because appellees took no action until the 2013 Gulfport lease and by that time, appellants had already leased oil and gas interests.

**{¶32}** In the case of contracts, deeds, or other written instruments, the construction of the writing is a matter of law, which is reviewed de novo. *Long Beach Assn., Inc. v. Jones,* 82 Ohio St.3d 574, 576, 697 N.E.2d 208 (1998). Under a de novo review, an appellate court may interpret the language of the contract, substituting its interpretation for that of the trial court. *Witte v. Protek Ltd.,* 5th Dist. Stark No. 2009CA00230, 2010-Ohio-1193, ¶ 6, citing *Children's Medical Center v. Ward*, 87 Ohio App.3d 504, 622 N.E.2d 692 (2d Dist.1993).

**{¶33}** Written instruments "are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. "When construing a deed, a court must examine the language contained within the deed,

the question being not what the parties meant to say, but the meaning of what they did say, as courts cannot put words into an instrument which the parties themselves failed to do." *Johnson v. Consol. Coal Co.*, 7th Dist. Belmont No. 13 BE 3, 2015-Ohio-2246, ¶ 15 quoting, *McCoy v. AFTI Properties, Inc.*, 10th Dist. Franklin No. 07AP-713, 2008-Ohio-2304, ¶ 8. If the terms of the written instrument are clear and unambiguous, courts must give the words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set out in the contract. *Alexander v. Buckeye Pipe Line*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978).

{¶34}  But when the plain language of a written instrument is ambiguous, then a court can look to parol evidence to resolve the ambiguity and ascertain the parties' intent. *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 521, 639 N.E.2d 771 (1994); *City of Steubenville v. Jefferson Cty.*, 7th Dist. Jefferson No. 07JE51, 2008-Ohio-5053, ¶ 22. Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, 89 N.E.3d 274, ¶ 25 (9th Dist.). Parol evidence is used only to interpret the terms, and not to contradict the terms. *Id.,* citing *Blosser v. Enderlin*, 113 Ohio St. 121, 134, 148 N.E. 393 (1925). "The decision as to whether a contract is ambiguous and thus requires extrinsic evidence to ascertain its meaning is one of law." *Nader*, quoting *Ohio Historical Soc. v. Gen. Maintenance and Eng. Co.*, 65 Ohio App.3d 139, 146, 583 N.E.2d 340 (10th Dist.1989).

{¶35}  In *Sheba*, we reviewed language in an 1848 deed which conveyed property with a reservation to "the sole and exclusive right to all the minerals and coal lying" under a part of land transferred, giving the grantors the "right & privilege to mine the same" and explaining that "[t]he meaning & interest of the above exception is to reserve the coal and mineral privileges under the whole" of the tract of land.  2017-Ohio-7699 ¶ 3.  The trial court granted summary judgment and held that the references to "mining" in the deed reservation showed the intent to reserve only coal and other minerals that were mined, and not oil and gas, which are migratory minerals.  *Id.* at 8.

{¶36}  We began by acknowledging that "[i]n general, minerals include oil and gas." *Sheba* at ¶ 17 (citations omitted).  We reviewed a number of cases and in particular, *Detlor v. Holland*, 57 Ohio St. 492, 504, 49 N.E. 690 (1898).  In *Detlor*, the Ohio Supreme

Court held that an 1890 deed did not include oil and gas interests when it conveyed a mining right in lands to "all the coal of every variety, and all the iron ore, fire clay, and other valuable minerals" with the right to use the surface of the land necessary "to facilitate the mining and removal of such coal, ore, or other minerals." *Id.* at 502-504. To determine the intent of the parties, the Ohio Supreme Court looked at the deed as a whole, applied rules of construction to its terms, and explained that the deed terms had to be construed in light of the oil developments near the property at the time that the deed was constructed, which was in February of 1890. *Id.* The Supreme Court found that little oil was being produced near the property at that time and the parties were not aware of it. *Id.* The Court held that there was no evidence showing that the parties intended to include oil and gas in the conveyance. *Id.*

**{¶37}** In *Sheba*, we reviewed *Detlor* and Ohio appellate cases applying the principles in that case. We applied these principles to the 1848 deed, and affirmed the trial court's decision finding that the deed reservation did not reserve oil and gas interests in the property. *Id.* We held:

> Considering the principles in *Detlor,* the much earlier deed in this case, the lack of evidence that oil and gas production were contemplated at the time or place of conveyance, and the state's history of oil and gas production, this court overrules this assignment of error and upholds the trial court's decision finding the 1848 deed did not reserve oil and gas interests.

*Id.* ¶ 35. We found that the *Detlor* holding suggested that: "the more recent the deed, the more likely it is oil and gas were intended to be included as minerals." *Id.* ¶ 31.

**{¶38}** Applying *Sheba*, the trial court in this case held that Mary Geneva Garrett's deed reservation included oil and gas because there was oil and gas development and activity in Noble County in 1977 when the Deed of Fiduciary was executed. Appellants assert that the deed reservation language must be construed against appellees because it is ambiguous. They further contend that appellees' inaction on the property until 2013 and their action on the oil and gas interests showed that both parties acted as if oil and gas were not reserved in the Deed of Fiduciary.

{¶39}    We find no merit to appellants' assertions. Appellants failed to produce evidence which showed that the reservation had limiting language like that in *Detlor*. Thus, this Court looks to the language used in the reservation and the surrounding circumstances of oil and gas development at the time of the reservation. The language in the Deed of Fiduciary states that Mary Geneva Garrett was "RESERVING from the above-described one-half interest **all** the mineral rights in and under" the property (emphasis added). Further, appellants failed to establish that oil and gas development was not occurring in Noble County in 1977 when the reservation was made. In fact, the trial court found otherwise.

{¶40}    Even if we find the reservation language ambiguous and construe it strongly against appellees, appellants fail to provide legal support to find that appellees were required to take affirmative steps, such as leasing the oil and gas interests, in order to show their intent to reserve those interests. And appellants failed to present parol evidence rebutting a finding that Mary Geneva Garrett's reservation included oil and gas. She reserved "all mineral rights in and under" the property based upon the interests set forth in the will of Herbert Garrett, who bequeathed to her "[a]ll the real and personal" property "of every kind and description, wheresoever situate," that he owned or had a right to dispose of. He granted Mary Geneva Garrett the power to sell and dispose of said property for her support and maintenance. (Partial Motion for Summary Judgment, Ex. A2). He bequeathed "said real and personal property" given to Mary to the Garrett Heirs upon Mary's death or remarriage, "to be divided equally among them, absolutely and in fee simple." "(Partial Motion for Summary Judgment, Ex. A2)" The reservation language in the Deed of Fiduciary to "all mineral rights in and under the property" correlates to the original bequest to "all the real" property from Herbert Garrett.

{¶41}    For these reasons, appellant's assertion that the Deed of Reservation did not reserve the oil and gas interests lacks merit and is overruled.

{¶42}    Finally, appellants assert that even if the Deed of Fiduciary reserved the one-half interest in the oil and gas, they have adversely possessed those interests and the trial court erred by finding that they adversely possessed only the shallow rights and not the deep rights as well. Appellants maintain that under the Anderson Lease, they adversely possessed the oil and gas on the surface and below when they entered into a

lease with Trans Atlantic, leased the entire oil and gas estate in the property, authorized Trans Atlantic to drill for and produce oil and gas, oil and gas were produced, and they were paid royalties for the production. They contend that because the lease did not contain any depth limitation, it covered all formations below the surface to the center of the Earth and not just the shallow rights. They conclude that they adversely possessed all strata and the two wells on the property constituted open, obvious, notorious, continuous and exclusive possession of all of the interests in the property, including deep rights.

{¶43} In *Grace v. Koch*, 81 Ohio St.3d 577, 692 N.E.2d (1998) the Ohio Supreme Court held that in order to establish adverse possession, "a party must prove by clear and convincing evidence, exclusive possession and open, notorious, continuous, and adverse use for a period of twenty-one years." In *Miller v. Mellott*, we held that:

> Minerals which have been severed from the title to the surface may be acquired by adverse possession, but this can take place only when the possession is actual, continuous, open, notorious and hostile. It cannot be accomplished by secret trespass upon the owner's rights. It has been held in many cases that where there has been a severance of the minerals from the surface, neither the owner of the surface nor the owner of the minerals can claim the other's estate merely by force of the possession of his own estate. Neither does the owner of the minerals lose his right by mere nonuse. His title can only be defeated by acts which actually take the minerals out of his possession.

"7th Dist. Monroe No. 18 MO 0004, 2019-Ohio-504, ¶35, citing *Gill v. Fletcher,* 74 Ohio St. 295, 78 N.E. 433, 113 Am.St.Rep. 962 (1906*); Yoss v. Markley*, 68 N.E.2d 399 (CP) (1946); *Harper v. Jones,* 35 O.O. 524, 74 N.E.2d 397 (CP) (1947).

{¶44} We further held in *Mellott* that courts look to the acts of those claiming adverse ownership and they must establish proof that they met all of the elements of adverse possession for 21 years. *Mellott,* 2019-Ohio-504, ¶ 37 (7th Dist.), citing *Koch*, (1998), 81 Ohio St.3d 577, 692 N.E.2d 1009, syllabus. We held that in order to establish

the actual possession element, a claimant has to perform activities which show ownership. *Mellott*, 2019-Ohio-504, ¶ 37 (7th Dist.), citing *Vanasdal v. Brinker*, 27 Ohio App.3d 298, 500 N.E.2d 876 (1985). We noted that the courts have divided possession in such cases as those which are productive uses and those which are mere maintenance. Only productive uses are sufficient for actual possession and this also applies to mineral interests that are severed. *Id.* at ¶ ¶16, 17, 18. Citing Ohio Supreme Court law, we held that a productive use is any that "takes the mineral out of the record owner's possession." *Id.* citing *Gill*, 74 Ohio St. 295, 78 N.E. 433 (1906). This requires the actual development of the oil and gas mineral rights. *Id.*

{¶45} In the instant case, the trial court found that the best evidence of whether appellants adversely possessed the rights that were leased to Gulfport by appellees was whether those rights were subjected to use or affected by appellants. The court held that appellants did not use or affect the deep rights before appellees' lease with Gulfport and thus they failed to establish the exclusivity requirement for adverse possession. The court found that the Gulfport leases were proof that appellees had exclusive use of the deep rights.

{¶46} However, the court determined that appellants adversely possessed the shallow rights or the formations from the surface to 2,414 feet below the surface of the property based on their leases with Trans Atlantic. Counsel for appellants stated at the hearing that appellees did not raise the issue of separation of shallow rights from deep rights and thus it was not before the court. The court nevertheless decided this issue.

{¶47} Appellants are correct that John and Coralee Garrett, then the Andersons, and now appellants, took actions from 1991 to August of 2013 which resulted in leasing with and authorizing Trans Atlantic to drill and produce oil and gas. However, mere leasing of the oil and gas interests does not suffice to establish actual or exclusive possession of the deep rights. *Mellott*, 2019-Ohio-504, ¶ 35. While appellees were not required to act to establish their ownership, appellants took action to exclude appellees and oil and gas were actually produced from the two wells placed on the property through Trans Atlantic, and appellants were paid 100% of the royalties from that production. This actual development of the oil and gas rights took the minerals out of appellees' possession*. Id.* Accordingly, appellants' lease which constructed wells on the property

and the drilling and production of oil and gas on the property is considered a productive use constituting actual possession for adverse possession purposes. *Mellott,* at ¶ 38.

**{¶48}** However, the trial court went on to separate the shallow rights from the deep rights, finding that appellants did not establish adverse possession of the deep rights. Appellants concede that the wells developed under the lease with Trans Atlantic produced oil and gas from only the shallow rights. (Appellant Brief at 26). However, they cite *Humphries v. Huffman*, 33 Ohio St. 395, 403 (1878) and assert that they acquired all shallow and deep rights from the one-half interest under color of title. They submit that "under long-standing Ohio law, if a person claiming title to a property by adverse possession claims under color of title, the adverse claimant's use of a portion of the property will extend to the entire property, even if the adverse claimant only occupied part of the property during the 21-year period of adverse possession." *Id.* They assert that the production of oil and gas from the surface extends to include the deep rights and they rely upon the fact that the Anderson lease described the entire property, including all subsurface strata.

**{¶49}** We note that appellees did not cross-appeal on the adverse possession decision made by the trial court. However, they contend in their appellate brief that since appellants' oil and gas production extended only to the shallow rights, appellants still had to provide clear and convincing evidence of all of the elements of adverse possession in order to adversely possess the deep rights in the property. They submit that appellants never exerted control over the deep rights and the mere execution of the lease which extended to all strata is insufficient to warrant adverse possession when production came only from the shallow rights.

**{¶50}** Each adverse possession case rests on its peculiar facts. *Oeltjen v. Akron Associated Invest. Co.*, 106 Ohio App. 128, 130, 153 N.E.2d 715 (9th Dist. 1958). In *Gill v. Fletcher*, 74 Ohio St. 295, 305-306, 78 N.E. 433 (1906), the Ohio Supreme Court held that, "[a] tenant in common cannot assert title by adverse possession against his co-tenant unless he shows a definite and continuous assertion of adverse right by overt acts of unequivocal character clearly indicating an assertion of ownership of the premises to the exclusion of the right of the co-tenant." The Ohio Supreme Court held that "[a]ctual possession of the surface and constructive possession of the mineral under color of

deeds will not be sufficient. It must be an actual interference with the seisin of plaintiffs with denial of their title." *Id.* at 306. Proof of long-continued possession under a claim of ownership and absence of a titleholder claim alone are insufficient to affirm summary judgment. *See Hardaway v. Nixon*, 544 S.W.3d 402, 409 (Tex. App. 2017).

**{¶51}** In the instant case, appellants and appellees were co-tenants of the oil and gas rights. In order to adversely possess appellees' one-half interest, appellants must have taken an overt act of unequivocal character that clearly showed an assertion of ownership by appellants to the exclusion of appellees. *Gill*, 74 Ohio St. at 306. Mere possession is insufficient "because that possession is presumed consistent with the other co-tenants' right to enter the land at any time." *Reel v. Reel*, 11th Dist. Trumbull No. 2016-T-0038, l2016-Ohio-8116, ¶ 46 (11th Dist.), quoting *Pottmeyer v. Douglas*, 4th Dist. Washington No. 10CA7, 2010-Ohio-5293, ¶ 32. However, actual notice of ouster is not required. *Elder v. McClaskey*, 70 F. 529 (C.C.A. 6th Cir. 1895). The trial court here found that appellants had sufficiently established the elements of adverse possession against appellees when it found in favor of appellants.

**{¶52}** We agree. Appellants entered into a lease with Trans Atlantic, and through that lease began drilling on the property, and oil and gas were produced. They drilled and produced oil and gas for over 21 years from 1991 to August of 2013. Appellees did not check on the property or records of any leases or encumbrances for drilling on the property. Had they done so, they would have noticed the two wells or the lease encumbrance. Further, the records would show they had received no royalty payments despite the placement of the wells on the property via appellants' lease with Trans Atlantic which were producing oil and gas for over 21 years. These facts sufficiently establish overt acts of unequivocal character asserting ownership by appellants to appellees' exclusion.

**{¶53}** However, the trial court further held that because appellants had drilled from the surface to only 2,414 feet below the surface of the land, it did not use the deep rights and therefore could not establish exclusivity for adverse possession of the deep rights. The court found that one can only possess that which he has used and therefore appellants had adversely possessed only the shallow rights.

{¶54}   Appellants contend that because they adversely possessed the one-half oil and gas estate under color of title, their adverse possession extends to the entire one-half, which includes the deep rights. Appellees agree with the trial court that appellants can only adversely possess that which they actually possess, which in this case is the shallow rights.  They liken the entire one-half interest of shallow and deep rights to one who claims ownership by adverse possession over another's tract of land merely by possessing a small corner of the tract.

{¶55}   Neither party cites cases directly addressing the vertical limits of an adverse possessor's rights to minerals and we find no caselaw on point.  In *Diederick v. Ware*, 288 S.W.2d 643, 645-646 (C.A. Ky. 1956), the Kentucky trial court found that the appellee, owner of the surface of a 56-acre tract, became the adverse possessor of the minerals underneath the surface after he met the adverse possession elements, including the clear repudiation to the owner of the mineral rights for the minerals that were being claimed adversely.  The trial court found that the surface owner became the adverse possessor of the minerals based on his operation of two oil wells for the requisite statutory period of limitations.  The trial court did not discuss whether the appellee had adverse possession of the oil under the entire tract of land.

{¶56}   After agreeing with the trial court concerning adverse possession of the minerals, the Kentucky Court of Appeals noted that caselaw was not uniform in determining whether working part of a mineral estate is sufficient to give title to the mineral underlying the whole of it.  *Diederich*, 288 S.W.2d 643, 646-647 (citations omitted).  The court found that the operation of the two wells on the property modified the subterranean structure under the large tract of land and this constituted constructive possession of all of the minerals underlying the entire 56-acre estate.  *Id.* at 646-647.  The court discussed the fugacious nature of oil and gas and how it alters property and the strata upon withdrawal of oil and gas by drilling.  *Id.*  The court held that the adverse possessors exercised constructive possession over all of the minerals in the entire tract of land due to this alteration and permeation of oil and gas.  *Id.*

{¶57}   In the instant case, we find the same.  Adverse possession of the deep rights should follow the shallow rights due to the alteration of the surface and subsurface from drilling and removing the oil and gas. Merely because drilling had not yet affected

Case No. 20 NO 0473

the deep rights should not yield a finding that there is no adverse possession of the deep rights. The Court finds that appellee possesses the deep rights in this case based upon the adverse possession of the shallow rights, the permeating nature of the drilling and production of oil and gas, and the lease with Trans Atlantic which provided for drilling to all strata.

**{¶58}** For these reasons, appellant's assertion that adverse possession of the shallow rights included the deep rights has merit.

**{¶59}** In conclusion, the trial court's judgment is hereby affirmed in part, reversed in part, and modified. We affirm that part of the trial court's judgment holding that the language of the Deed of Fiduciary included oil and gas. We also affirm the trial court's granting of partial summary judgment in favor of appellants as to adversely possessing from the surface to the shallow rights of the property. However, we reverse that part of the trial court's judgment separating the deep rights and denying adverse possession of the deep rights to appellants. We hereby modify the trial court's judgment to also include adverse possession of the deep rights by appellants.

Robb, J., concurs.

D'Apolito, J., concurs.

Case No. 20 NO 0473

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is with merit in part and overruled in part. It is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed in part, reversed in part, and modified. This Court affirms that part of the trial court's judgment holding that the language of the Deed of Fiduciary included oil and gas. This Court also affirms that part of the trial court's judgment in favor of appellants as to adversely possessing from the surface to the shallow rights of the property. This Court reverses the trial court's judgment separating the deep rights and denying adverse possession of the deep rights to appellants. We hereby modify the trial court's judgment to also include adverse possession of the deep rights by appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**NOTICE TO COUNSEL**

**This document constitutes a final judgment entry.**